BROWN v. JEFFERSON COUNTY.

1. CHANGE OF VENUE. The Supreme Court will not interfere with an order of the court below, overruling a motion to redocket a cause after a change of venue, on the ground that the transcript fees were not paid to the

clerk within the time prescribed by § 2810 of the Revision of 1860, when it does not appear affirmatively that such fees were not *secured* as required by said section.

2. HIGHWAY: EVIDENCE. That a road is used and traveled by the public as a highway, that it is recognized by the public authorities as an established road, and that the county has constructed thereon bridges, and has done other work to put it into the condition of a highway, may be shown by parol, and, until rebutted, are sufficient to establish the existence and public character of the road.

3. BRIDGE: WARNING TO THE PUBLIC. That the authorities of a county caused a written notice warning the public of the dangerous character of a bridge to be posted thereon, and also caused an obstruction to be placed across one end thereof, both of which were subsequently removed, leaving the bridge open to the public, is not a sufficient defense to an action against the county for damages sustained by a party, by reason of the falling of the same, while he was crossing it, without knowledge of its condition. The notice posted or obstructions established, to discharge the county, must be effective.

4. EVIDENCE: CREDIBILITY OF WITNESSES. The rule that the credibility of a witness is to be determined by the jury, applies when a party is a witness for himself and is contradicted by another witness who has no interest in the event of the suit.

5. VERDICT: DAMAGES FOR PERSONAL INJURY. When the jury, in the light of all the facts, has returned a verdict estimating the damages sustained by a personal injury, which the court below has refused to set aside, the Supreme Court will not interfere, unless an abuse of discretion is made manifest.

*Appeal from Washington District Court.*

FRIDAY, JUNE 10.

PLAINTIFF seeks to recover for injuries received by the falling of a bridge over which he was passing with a team, said bridge forming a part of the public road or highway leading from Birmingham, in Van Buren county, to Fairfield, in Jefferson county. The injury was sustained in June, 1860. A demurrer was originally interposed to the petition, which, on appeal to this Court, was held to have been properly overruled. 13 Iowa, 181. After this the

cause was removed by change of venue, on plaintiff's motion, from Jefferson to Washington county; a trial had upon the merits before a jury; verdict for plaintiff in the sum of $3,839.75. Motion for new trial overruled and defendant appeals.

*Negus & Culbertson* for the appellant, cited the following authorities: *Rusch* v. *The City of Davenport*, 6 Iowa, 443; *Smith* v. *Smith*, 2 Pick., 623; Ang. & A. Highways, § 290; Greenl. Ev., §§ 82, 86.

*Stubbs and Slagle & Atcheson*, for the appellee, cited 1 Greenl. Ev., § 128; *Neally* v. *Brown et al.*, 1 Gilm., 10; *Lyman et al.* v. *The People*, Id., 4.

WRIGHT, Ch. J.— I. The change of venue was ordered January 5th, 1863. The clerk of Jefferson certified the transcript, July 31st, and it was filed in the Washington District Court, August 6th, 1863. On the 5th of August, defendant filed in vacation, in the clerk's office of Jefferson county, a motion to redocket the cause, and retain it for trial in the court where it was originally brought, for the reason that the fees of the clerk for making out the said transcript were not paid on or before the morning of the second day after the order changing the venue was made, nor were the same paid at the time of filing said motion.

After this, both parties proceeded to take depositions and prepare the case for trial in Washington county, and at the next term in Jefferson county, defendant's motion to redocket the cause was overruled, and this ruling is the first matter demanding our attention.

The language of the statute is, that if the " change of venue be taken in vacation, and the applicant therefor has not procured the transmission of the papers to the proper county, before the first day of the next term thereafter, then such party shall be held to have waived his

change of venue, and the cause shall be retained in the court where pending for trial therein, unless such non-transmission be the entire fault of the clerk; and if such change be taken during a term of court, unless the cause be so transmitted as aforesaid, or the costs of the clerk therefor be paid or secured by the morning of the second day thereafter, or before said· cause be reached for trial, if sooner reached, then such cause shall be retained for trial in the court where pending, and shall be tried as if no change had been prayed." Rev., § 2810.

Without entering into a full exposition of the meaning of this statute, it is sufficient to say that we will not interfere with the action of the Court below, for the reason that there is nothing to show that plaintiff had not "*secured* the costs of the clerk," in strict compliance with the law. If thus *secured*, it was the same as though they had been paid. Indeed, the fact that the clerk had made out and certified the transcript prior to the making of this motion, shows that they were thus secured (if not paid), for the preceding section (2809) gives him the right to require payment before transmitting such transcript. Add to this, the fact, that appellant, after filing this motion, treated the cause as pending in Washington, and prepared the defense accordingly, that there does not seem to have been any delay or prejudice occasioned by the failure to sooner file the transcript in the county to which the change was taken, omitting and passing the consideration of other views presented by appellee; and we are not prepared to say that the Court erred in overruling this motion.

II. On the trial, plaintiff introduced parol testimony to prove that there was a public road between Birmingham and Fairfield, and that on this road was situated the bridge, the falling of which occasioned the injury complained of; to which testimony defendant objected that this was not the best evidence, that the existence of the road could only be

shown by the public records. The objection was overruled, and this ruling is now assigned as error.

It appears that this road was used and traveled by the public as a public highway, that it was recognized by the county authorities and supervisors as an established road; that this bridge was built by the county and treated as part of the highway (and bridges are parts of the public highway, Rev., § 822), and until rebutted, these facts were sufficient to show the existence and public character of the road. Indeed, the incorrectness of appellant's position is sufficiently manifest in the thought that the real question was not whether a road had been originally established on the exact line of the then travel, but whether the county had, by its officers and agents, opened this road for the public, constructing thereon bridges, and doing other work to make it passable and invite and induce the public to travel the same. For the purposes of the present case, the surveyed line was quite immaterial, for there was no pretense that it made any other than that traveled. Not only so, but all that was incumbent on plaintiff was to show that this road existed and was traveled as a public highway. It was, so to speak, a "public fact," and as such, could be established by any one having sufficient knowledge to speak upon the subject. (1 Greenl. Ev., § 128.)

III. Exceptions are also urged to the instructions as given, and the refusal of others. So far as these relate to the instructions given by the Court, in chief, there is no pretense that they are all erroneous; and following *Davenport Gas Light and Coke Company* v. *The City of Davenport*, 13 Iowa, 229; *Cousins* v. *Westcott*, 15 Iowa, 253; *Lyons* v. *Thompson*, *ante*, and the cases there cited, we pass them without further consideration.

Some instructions, asked by the defendant, were refused, however, and others again given, with certain modifications; and to these we turn our attention.

It seems that some time prior to the falling of the bridge, the county authorities, apprehensive that the bridge was unsafe, had posted up a written notice on some part of it, advising travelers of danger, and ·had caused a pole to be laid across one end of it for the same purpose. There was nothing to show, however, that any such notice was there, or any such warning given at the time plaintiff received his injury. On the contrary, the existence of such warning and notice is almost conclusively rebutted. Not only so, but it seems that the mail coach had crossed the bridge just in advance of the plaintiff; that a team was waiting at the same time at the north end (plaintiff was coming from the south) to cross; that the travel was uninterrupted, and the public, apparently, unwarned. Under such circumstances, the prior posting of such notices and acts of a similar nature, without knowledge of the same, on the part of plaintiff, would not protect the county, though they may have been removed by "evil disposed persons." If the county officials knew the bridge was unsafe, it was their duty not only to *give* such notice as would be effective, or if they relied upon obstructions, to not only place them there, but to see that such notices or obstructions were kept and continued in such a manner as would accomplish the purpose designed. However cautious and prudent they may have been in posting the necessary notice, or in placing the obstructions, cannot avail, though they may have been removed by good or evil disposed persons. Travelers are not to be remitted to their remedy against such persons, but have a right to hold liable the corporation, whose duty it is, by law, to attend to the repair and safe condition of the public highway and every part thereof. The duty of the county was plain, and easily to be performed. By removing a portion of the floor, by throwing obstructions upon the road leading to the bridge, by nailing and securing plank across

either end, in these and various other methods, all persons, strangers and those residing in the immediate vicinity, would have been duly advised, and all probabilities of loss or injury removed. But instead of this, a written notice was posted, which for aught that is shown to the unsuspecting traveler, had as much the appearance of a "constable's notice," as a note of warning; and this had ceased to have any existence long prior to this accident; and the same is true as to the obstruction, by placing the pole across one end. How long it was there, whether plaintiff had ever seen it, or had knowledge of its existence, how long it had been removed, does not appear.

In this attitude of the case, there was no error in refusing the *first* instruction asked by defendant, which assumes that defendant would not be liable if the notice was given and the obstruction was placed there and they were subsequently torn down and removed by "evil disposed persons." And the same is true as to the second instruction, with the additional remark, that it assumes that these obstructions, &c., existed and were known to plaintiff when crossing the bridge upon occasions prior to that at which the accident occurred. There is no proof whatever, that he ever had any knowledge of these matters; and the instruction was properly refused as being inapplicable, if for no other reason.

It is objected that the modifications following the third instruction had a tendency to confuse and bias the jury. We need only say that it was strictly necessary in order to avoid any misapprehension from the peculiar language of the instruction as asked. It assumes, in a manner somewhat more unexceptionable, almost the same state of facts contained in the second; and the remarks of the Court seem to have been pertinent in order to place the case in its true and proper attitude before the jury. And in leaving this part of the case, we remark that there is

nothing in the case of *Rusch* v. *The City of Davenport*, 6 Iowa, 443, in any way favoring the instructions asked by defendant and refused, nor in the least in conflict with the modification above noticed. And the same is true as to the instructions in chief.

It appears that a witness, on the part of the defendant, on one material point contradicted in express terms the testimony of plaintiff. On this subject the defendant asked in substance that the jury should be instructed that they should give the greater weight and credence to the witness who had no interest in the result of the verdict. The Court added to such instruction, this language: "By this it is not meant that if one witness, who is a party, is contradicted by another, who is not a party, that you are to take the evidence of the person who is not a party, and reject the other as false. In all cases the credibility of witnesses is a question for the jury to decide from all the circumstances in the case." Then follows remarks as to the influence which the conduct and demeanor of a witness, his manner of testifying, whether with apparent candor or a desire to color and warp the evidence, should legitimately have, in determining upon their credibility, as to the correctness of all which there can be no room for doubt. That the Court took the correct view of the question, we think is quite clear. Under our law, a party to an action is a competent witness, and a jury may be perfectly justified in accepting his version of a transaction, rather than that of another who has no pecuniary interest in the result of the verdict. The manner of the so-called disinterested witness may show unmistakably that his feeling or bias is of that character which would influence and give color to his statements, and thus make him much less reliable than one whose pecuniary all was involved in the issue. There is no such rule as that a jury shall reject the testimony of the party, and accept, in case of conflict, that of a

witness not interested in the result. It is for the jury to judge and determine between them.

IV. It is finally insisted that the verdict was excessive and unwarranted by the evidence. That the jury were justified in finding some amount for plaintiff, is not seriously claimed, and could not, indeed, well be, under the testimony. Did the jury allow too much? We cannot say that they did. Plaintiff was thrown with the falling bridge into the stream beneath, a distance of some eighteen or twenty feet. Various parts of his body were bruised, and an ankle sprained. But the more serious injury was in a comminuted fracture of the patella or knee-pan. From these injuries he was confined to his room some time; in their treatment, he employed surgical aid; was unable to walk except with the assistance of crutches or a cane, for some months, and the testimony tends to show that this leg is not so long or so strong as the other; that it never can be restored to a sound condition; in a word, that plaintiff has been made a cripple for life. Under such circumstances, in view of the well understood rule in cases of this character, where the jury, in the light of all the facts, has rendered a verdict which the court below has refused to disturb, and the discretion, justly and wisely lodged with the jury, in estimating the damages resulting from a personal injury, we feel constrained to hold that we cannot interfere. Without referring to the many and clear authorities on this subject, we content ourselves with citing, *Brockman* v. *Berryhill, ante*; Sedgwick on Damages, 601–2; *Whipple* v. *Manufacturing Co.*, 2 Story, 661; *Wiggin* v. *Coffin*, 3 Id., 1; *Thurston* v. *Martin*, 5 Mason, 197; *Berry* v. *Vreeland*, 1 Zabr., 183.

Affirmed.