| 48 | 504 |
| 76 | 615 |

SOUTH-WEST SCHOOL DISTRICT OF BOLTON *vs.* RUTH A. WILLIAMS AND ANOTHER.

Matters of a public or general interest may be proved by the declarations of deceased persons who were in a situation to have knowledge of them.

But dates or particular facts that are not in themselves matters of general knowledge, though connected with those which are, can not be thus proved.

In a controversy as to the title to land upon which a school-house had stood for many years, it was held that the date of the erection of the school-house could not be thus proved.

CIVIL ACTION to recover for an entry into and injury to a school-house belonging to the plaintiffs; brought originally before a justice of the peace and by appeal to the Superior Court in Tolland County, and there tried to the jury before *Hovey, J.* Verdict for the plaintiffs and motion for a new trial by the defendants. The case is sufficiently stated in the opinion.

*S. E. Fairfield* and *W. A. King*, in support of the motion, cited *Chapman* v. *Chapman*, 2 Conn., 348; *Higley* v. *Bidwell*, 9 id., 451; *Wooster* v. *Butler*, 13 id., 316; *Kinney* v. *Farnsworth*, 17 id., 362; 1 Stark. Ev., 69; 1 Greenl. Ev., §§ 128, 130, 138; 1 Phill. Ev., 178, 197; 1 Swift Dig., 766; Swift Ev., 123.

*B. H. Bill* and *C. Phelps*, contra.

LOOMIS, J.   The complaint alleges a malicious injury by the defendants to the school-house and furniture therein belonging to the plaintiffs. The defendants' answer denies the ownership of the plaintiffs, and alleges that the school-house belonged to Ruth A. Williams, one of the defendants.

The plaintiffs in support of their title offered evidence to prove that in the year 1808 one Joseph Webster, then owner in fee of the land, made a gift of the same by parol to the plaintiffs for a school-house site, which the plaintiffs accepted, and immediately took possession and erected a school-house thereon, and have continued ever since in the exclusive possession, use and occupation under a claim of title, with the knowledge and acquiescence of said Joseph Webster and his representatives.

The defendants claimed title under the will of Joseph Webster, who died.December 30th, 1809, leaving Ruth Webster, his widow, Sabra Risley, a daughter, and Ruth Webster Culver, a granddaughter, surviving. The widow died in 1826. The granddaughter in the lifetime of her mother

married Jacob Webster, and by him had one child, Ruth A., one of the defendants, to whom on the 30th of September, 1872, the land on which the school-house was situated was distributed by distributors appointed by the court of probate.

The defendants objected to the plaintiffs' evidence to show a gift of the land for a school-house site by Joseph Webster, and "requested the court to charge the jury that there had not been such an entry, nor afterwards such an occupancy of the premises by the plaintiffs, as to give them a title by possession; that the time and the manner of taking such possession, if it occurred at all before the death of Joseph . Webster, was by his parol license and permission, and was not sufficient; and that from the time of his death until the death of the said Ruth Webster Culver in September, 1872, the plaintiffs could not acquire title by possession."

The court overruled the objection to the evidence and refused to charge as requested, and in both respects was so manifestly right that the defendants' counsel do not make either of the questions in this court, and therefore they require no discussion.

One other question only is presented by the motion. The counsel for the defendants called upon Ruth A. Williams, one of the defendants, as a witness, and for the purpose of proving the time when the school-house was erected by the plaintiffs, asked her—" Did your mother or great-grandmother tell you when the school-house was built—before or after the death of Joseph Webster?"—which, upon the plaintiffs' objection, was excluded by the court.

The objection was not to the fact—which is conceded to have been material—but only to the mode of proving it, namely, by the declarations of the witness's mother and great-grandmother.

In support of the claim that the evidence was admissible the defendants invoke the benefit of an exception to the general rule excluding hearsay evidence upon the ground that the matter in question was of public and general interest.

As included within this exception the authorities mention boundaries of counties, towns and other territorial divisions,

rights of common, claims of highways and ferries, and in this and some other states the boundaries of lands of individuals. But no such fact as the one now in question has ever been mentioned as proper to be included in this class.

The fallacy on the part of the defendants seems to be in assuming that because a school-house is a public building for a public purpose, the precise date of its erection must also be matter of public or general interest to be proved by traditionary evidence; and therefore one of the defendants attempts, by repeating the unsworn statement of her deceased mother or grandmother as to a date, to change this public matter of a school-house into her own private property.

And this well illustrates the danger of extending the exception so as to embrace particular facts and dates. In this case there was doubtless other and better evidence to be found in the records of the school district or from living witnesses. But however this may have been, a reference to the reason for admitting traditionary evidence in public matters will show that particular dates like this ought not to be included. The law does not dispense with the sanction of an oath and the test of cross-examination as a pre-requisite for the admission of verbal testimony, unless it discovers in the nature of the case some other sanction or test deemed equivalent for ascertaining the truth.

The matters included in the class under consideration are such that many persons are deemed cognizant of them and interested in their truth, so that there is neither the ability nor the temptation to misrepresent that exists in other cases; and the matters are presumably the subject of frequent discussion and criticism, which accomplishes in a manner the purpose of a cross-examination, while the persons whose declarations are offered in evidence must have been in a situation to know the truth. After passing such an ordeal it is reasonably safe to accept the result as established fact. But if the fact to be proved is a particular date, though connected incidentally with a public matter, it is easy to see that it could not stand out as a salient fact for contem-

poraneous criticism and discussion so as to furnish any guaranty for its correctness; so that the general rule excluding hearsay evidence applies in full force. The human memory is proverbially treacherous even in regard to very recent dates, and little reliance can be placed on the sworn testimony of living witnesses in such matters, unless they are able to associate the date given with some more striking fact.

The ruling of the court excluding the evidence is vindicated not only by the reasons we have given, but also by decided cases which are so similar to the case at bar as to be identical in principle.

In *Frazer* v. *Hunter*, 5 Cranch C. C., 470, it was held that when the question is upon a disputed boundary line the court will not permit hearsay evidence to be given that a particular object, such as a spring, was in the land of one of the parties.

In *Ireland* v. *Powell*, Peake's Ev., 14, where the question was whether a turnpike was erected within or out of the limits of the town of Wem, Mr. Justice Chambre permitted the plaintiff, who contended that it was within the town, to give evidence of general reputation that the town extended to a close called the Townend Piece, and that old people since deceased had said that such was the boundary of the town; but he would not suffer it to be proved that those persons had said that there were formerly houses where none then stood, observing that this was evidence of a particular fact and not of general reputation. See also *Cooke* v. *Banks*, 2 Car. & P., 478; *Weeks* v. *Sparke*, 1 Maule & Selw., 687. And in 1 Swift's Digest, 766, it is said that the tradition of a particular fact is not admissible.

The principle we think also derives support from certain decisions relative to hearsay evidence to prove facts of family history or pedigree, where such evidence has been excluded when offered to prove the particular place of one's birth or death. *Town of Union* v. *Town of Plainfield*, 39 Conn., 563, and cases there cited; *McCarty* v. *Deming*, 4 Lansing, 440; *Monkton* v. *Attorney-General*, 2 Russ. & M., 156.

The counsel for the plaintiffs in their brief contend that a proper construction of the will of Joseph Webster would have rendered it immaterial whether the date of building the school-house was before or after his death, because the will, if construed according to the rules laid down in *Hull* v. *Culver*, 34 Conn., 404, *McKenzie's Appeal from Probate*, 41 Conn., 607, and *Lewis* v. *Palmer*, 46 Conn., 454, would have vested an absolute title to the land in question in the widow of the testator, or at least such an absolute power of disposal as would enable the plaintiffs to gain a title by adverse possession against her alone. The court below adopted a construction of the will most favorable to the defendants, and even under such a construction the plaintiffs maintained their title. It would not therefore be important to revise the ruling on this subject if the motion had raised the question, which it does not. The defendants find no fault with this ruling; and in the result of the case the plaintiffs were not prejudiced by it, even if it was erroneous.

A new trial is not advised.

In this opinion the other judges concurred.