T. D. DOKE, Appellant, v. DAVIS COUNTY, Appellee.

Counties: DEFECTIVE BRIDGES: NOTICE: LIABILITY FOR INJURY. Where a member of the board of supervisors was notified several days before plaintiff's accident that the approach to a bridge at which he was injured had been washed out, and the supervisor did nothing to warn or protect the traveling public from the danger, the county could not escape liability on the ground that the bridge was not in the territory assigned to the supervisor for his care and supervision, or that there was no regular or special meeting of the board between the time of the washout and the accident.

*Appeal from Davis District Court.*—HON. F. M. HUNTER, Judge.

TUESDAY, OCTOBER 20, 1914.

ACTION at law to recover damages for injuries done to plaintiff's team and harness, due to a defective approach to a county bridge in the defendant county. The case was tried to the court without a jury, resulting in a judgment dismissing plaintiff's petition, and he appeals. *Reversed.*

*Payne & Goodson,* for appellant.

*C. W. Ramseyer,* for appellee.

DEEMER, J.—The trial court made findings of fact, from which we extract the following:

A. That the plaintiff was damaged by reason of the injuries to the horses and harness in the sum of $150.

B. That in driving over the bridge and the horses falling into the washout in the manner shown by the evidence, Dr. Stone, the driver of the team, was free from negligence contributing in any degree to the injuries and damages sustained.

C. That on the 28th day of September, five days before the accident complained of, there was a general rainfall of about seven inches, in Davis county, which caused the washout in question, as well as many other washouts on the public highways, and many of the bridges within the county.

D. That soon after such washout, and several days before the accident, one Schlegel, a farmer residing in the vicinity of the bridge, telephoned to Mr. Brouhard, a member of the board of supervisors and who did not reside in the neighborhood of the bridge, telling him of the washout and of the dangerous condition prevailing on account of it. Mr. Brouhard did not know the exact location of the bridge, but Schlegel described the location to him as best he could and told him it was in Grove township, and Brouhard then advised Mr. Schlegel that the bridge was in the territory assigned to Mr. Woolard, for the care of the bridge, which was a fact. Neither of the other members of the board had any knowledge of the conditions prevailing at the bridge until after the accident, and Mr. Brouhard had no other information concerning them than that given by telephone message, until after the accident.

E. That prior to the accident the board of supervisors, nor any member thereof, nor any one else, repaired the washout or in any manner barricaded the use of the bridge or gave public notice of the washout, and neither the plaintiff nor Dr. Stone knew of it until the occurrence complained of.

F. The portion of the highway in which the washout occurred was a part of the approach to the bridge and within the territory that the board of supervisors was required to keep in repair.

G. There was no meeting of the board of supervisors, either general or special, between the date the washout occurred and the date of the accident. However, the bridge in question was a county bridge, and it was the duty of defendant to maintain it, and the notice given to Mr. Brouhard was a sufficient notice to the county, and if the county failed to make the necessary repairs or to barricade the bridge so as to prevent its use by the public, within a reasonable time thereafter, the county would be liable for the damages sustained.

As above found, the washout occurred following the rain of September 28th, and the accident happened five days after the rain, and Mr. Brouhard had notice of the condition but not to exceed four days prior to the accident. As there was no

meeting of the board after the washout and before the accident, and no special meeting of the board could have been called and held, in the manner provided by law (Code, section 420) within that time, there is no basis upon which the board of supervisors, as a board, could be guilty of negligence, and therefore the county cannot be held guilty of negligence for want of action by its board of supervisors.

Neither does the statute make it the duty of a member of the board of supervisors, in his individual capacity, to repair or barricade bridges which may be in need of repair, or to employ others to do so, and no decision of our Supreme Court has been cited, of which the court has knowledge, so holding. While a member of the board may repair or barricade a damaged bridge or approach, it is not, under the law, his duty to do so, in such a sense as to make the county guilty of negligence if he fails. If Mr. Brouhard had repaired or barricaded the bridge when he learned of the washout, or caused it to have been repaired or barricaded, it would have avoided this unfortunate accident. But his failure in this respect was not of such a nature as to make the county guilty of negligence. As the county's liability must depend upon negligence in the performance of its duty in some respect complained of, it cannot be held liable in this case.

Dr. Stone was not negligent in any degree, contributing to the injuries complained of; Mr. Doke likewise was not guilty of negligence, and it is not so claimed, and he has suffered the damages occasioned by the accident; and the county, as a corporate body, was not negligent and therefore is not liable to the plaintiff.

The final conclusion from these facts was that the defendant was not liable for the reasons stated, and judgment was rendered against plaintiff for costs. Every fact essential to plaintiff's recovery was found in his favor, unless it be that defendant was not guilty of negligence because no regular meeting of the county board intervened between the washout and the accident, and no special meeting could have been called after notice of the defect in the bridge and before the accident occurred.

Notice of the defect to a member of the board was

properly found to be binding upon the county, but the court held that as the bridge was not in the territory assigned to the member to whom the notice was given, but in that assigned to another, there was no liability on the part of the county for the reasons stated. With that conclusion we cannot agree. Surely some duty rested upon the member of the board to whom the notice was given, although not within that part of the county assigned to him. Without a meeting of the board he could have notified the member in whose territory the bridge was, or he could, without authority from the board, have barricaded the bridge or posted notices, or done something to protect the traveling public. But the record shows he did nothing. He did not take the trouble to notify the member of the board in whose territory the bridge was, and seemed to rest content with the thought that, no matter how unsafe the bridge, he was under no obligation to do anything to protect the traveling public, for the reason that the bridge was not in the territory assigned to him.

This assignment of territory was simply for the convenience of the board. It is not authorized by any statute with which we are familiar, and the rights of the public are not to be sacrificed because the board makes such an assignment. Perhaps the member could not have done more than notify his associates, or barricade the bridge, or post notices at proper places, giving warning to the public, or perhaps make temporary repairs; but something of this kind he was required to do, in virtue of his position as a member of the defendant's board of supervisors, charged with a public duty.

Of what avail is notice to a member of a county board of supervisors unless he is compelled to do something? Yet the trial court held that notice to a member of the board was binding upon the county, and charged it with some duty. But it is also held that as there was no regular meeting of the county board, and no special meeting could be held upon statutory notice, there was no liability.

It is not a case where the only action the defendant or

its officers could take was the building or rebuilding of a bridge, involving a large expense. If that were the only method of protecting the public, there might be some ground for the decision rendered by the trial court. But, as already suggested, the situation called for some act on the part of the supervisor receiving the notice, which would reasonably protect a traveler upon the highway from the dangers arising out of the defective approach. It surely cannot be that the county is only to be held liable upon notice to a member of its board of supervisors, after sufficient time has elapsed after a regular or special session of the board for the board in session to order something done for the protection of the public. No case so holds, and we are not disposed to make such a precedent.

Our conclusions find support in *Brown v. Jefferson County,* 16 Iowa, 339; *Doulon v. City of Clinton,* 33 Iowa, 397; *Weirs v. Jones County,* 80 Iowa, 351.

The judgment must be, and it is—*Reversed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.