GERTRUDE B. PIPER *vs.* GARDNER T. VOORHEES.

Cumberland.     Opinion June 29, 1931.

*Verrill, Hale, Booth & Ives*, for plaintiff.
*Skillin, Dyer & Payson*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

DUNN, J.   This is an action of trespass *quare clausum fregit*, for breaking and entering the close of the plaintiff, in the town of Scarborough, on September 28, 1927, and then, and in a succession of like or repeated trespasses, trampling and spoiling grass and herbage. The case comes up, on a report of the legally admissible evidence, from the Superior Court sitting in Cumberland County, for final determination. In the event plaintiff prevails, stipulation liquidates damages.

The action, it is conceded, is maintainable, unless defendant proves as a defense that, where the acts were done, the land is burdened (1) by a right of way in the public; (2) or in classes of the public of which he is one, namely, persons dwelling or sojourning in Scarborough, or in a particular village in that town; (3) or in himself individually. Some of the defenses claim an easement by prescription; some by custom.

The important facts in the case are undisputed.

The close, the approximate area of which is seventy acres, lies near Higgins Beach, where persons summer. Use apparently was for pasturage until, in 1921, plaintiff erected her dwelling house thereon. In the main, the land is still uncultivated; it is "wild land," to use the descriptive words of a witness, in the sense that it is waste land.

On the southwest, a bluff rises from the sea. On the brow of this bluff, a pathway is discernible, on thinner or thicker coatings of earth, over outcropping ledge, and through bushes, across the premises of the plaintiff. In continuation from, and by projection

on adjoining lands, the path is from Higgins Beach to Scarborough Beach. At Higgins Beach, defendant has a summer cottage.

Fifty years or so ago, steps led over permanent fences, on either side of the locus, at the pathway. The steps were succeeded by turnstiles. The turnstiles have been gone for more than twenty years. From the time of their disappearance to 1926, the path appears to have been openly accessible. Plaintiff then built a wire fence across the path on the side towards Higgins Beach. Somebody cut the fence. In this situation, defendant entered and walked along the pathway and back again. He testified he had thus walked, from boyhood, in the summer seasons, for fifty years, more than a thousand times.

Testimony was admitted to show that, in colonial times, there was a common trail, or bridle path, along the shore above high-water mark, from Portland to Portsmouth and Boston, known as the King's Highway.

Augustus F. Moulton, Esquire, of the Cumberland Bar, who had been taken by his parents, in 1853, when but four years old, to Scarborough to live, testified in reference to the trail. His testimony was "from knowledge since 1878; prior thereto by report." In 1928, he traced the old path, on the locus and on the laterally adjoining lands, from beach to beach, the distance, as indicated on a chart or sketch, being about one mile.

Traditionary evidence is permissible, in exception to the rule excluding extrajudicial statements or declarations of third persons as hearsay, when the fact or tradition under investigation is of public or general interest. I Greenleaf on Evidence, Sec. 128; Wigmore on Evidence, Secs. 1582, 1583; 1 Phillips' Evidence, 189; *Reg.* v. *Bedfordshire*, 4 El. & Bl., 535; *Morewood* v. *Wood*, 14 East, 329, n., Lord Kenyon; *Wooster* v. *Butler*, 13 Conn., 309; *South-West School District* v. *Williams*, 48 Conn., 504; *Brown* v. *Jefferson County*, 16 Iowa, 339, 343; *Lawrence* v. *Tennant*, 64 N. H., 532, 543; *McKinnon* v. *Bliss*, 21 N. Y., 206, 218; *Drury* v. *Midland R. Co.*, 127 Mass., 571, 581; *Ellicott* v. *Pearl*, 10 Pet., 412, 9 Law ed., 475; *Morris* v. *Lessee of Harmer*, 7 Pet., 554, 558, 8 Law ed., 781, 783.

The admissibility of the declaration, it has been said, is sanctioned because the rights and liabilities are generally of ancient and

obscure origin, and may be acted upon only at distant intervals of time, and therefore direct proof of their existence ought not to be required; because, in local matters in which the community are interested, all persons living in the neighborhood are likely to be conversant; because, common rights and liabilities being naturally talked of in public, what is dropped in conversation respecting them may be presumed to be true; because conflicting interest would lead to contradiction from others if the statements were false; and thus a trustworthy reputation may arise from the concurrence of many parties, unconnected with each other, who are all interested in investigating the same subject. *Reg.* v. *Bedfordshire*, supra.

It is a prerequisite to the operation of the rule that the declarant must be dead, or supposed to be dead; otherwise transmission would not pass from prior generations beyond the reach of observation, to a living generation. *Davis* v. *Fuller*, 12 Vt., 178, 36 Am. Dec., 334; *South-West School District* v. *Williams*, supra; *Drury* v. *Midland R. Co.*, supra; *Ellicott* v. *Pearl*, supra. "The witness is only allowed to speak to what he has heard the dead man say respecting the reputation of the right of way . . . ." Mansfield, C. J., in the *Berkeley Peerage Case*, 4 Campb., 415.

There is room in the evidence for inference that they who declared to Mr. Moulton were old people, since dead. It is deducible, too, that the witness meant that those persons spoke to him of a trail or bridle path which, even at that time, had long ceased to be used.

The History of Scarborough, and the accompanying map, produced from the Maine Historical Society (Col. Maine His. Soc., Vol. 3), were admissible without extrinsic evidence of their authenticity, to prove remote facts of general history. *Bow* v. *Allenstown*, 34 N. H., 351, 368, 69 Am. Dec., 489, 498; 1 Enc. of Evidence, 880; *Almy* v. *Church*, 18 R. I., 182; *Drury* v. *Midland R. Co.*, supra; *Weld* v. *Brooks*, 152 Mass., 297, 305; *Whitman* v. *Shaw*, 166 Mass., 451; *State* v. *Wagner*, 61 Me., 178, 188; *Goodwin* v. *Jack*, 62 Me., 414; *Morris* v. *Lessee of Harmer*, supra. The map delineates, among other things, the route of a ferry road near the shore, in the now incorporated town of Scarborough.

"The highway in common use at that time," reads the history,

"was the seashore, which appears to have subjected travelers to some inconvenience besides that of the irregularities of the ferries; for in 1672 the court took measures to open a new way between the settlements."

In that year, Scarborough and other towns were ordered to mark the most convenient way for the passage of strangers and others from Wells to Falmouth (Portland). Col. Maine His. Soc., *supra.* Eventually an inland highway, "in general course of the present post-road between Wells and Portland," was opened. Col. Maine His. Soc., *supra.* ·

Like any other easement, a road may be extinguished. Elliott, Roads & Streets, 3rd ed., Sec. 1172; *Holt* v. *Sargent*, 15 Gray, 97, 101. A cesser for twenty years, unexplained, to use a way originally acquired by use, is regarded as a presumption, either that the former presumptive right has been extinguished in favor of some adverse right, or, where no such adverse right appears, that the former has been surrendered, or that it never existed. *Wooster* v. *Fiske*, 115 Me., 161.

In *Beardslee* v. *French*, 7 Conn., 125, Hosmer, C. J., speaking for the court, said: "Evidence to prove a highway often consists in showing that the public have used and enjoyed the road; and the uninterrupted use of it, for a considerable space of time, affords a strong presumption of a grant. On the other hand, the nonuser of an easement of this kind, for many years, is *prima facie* evidence of a release of the right to the person over whose land the highway once ran; and although the precise limit of time in respect to the public, in such cases, has not been established, there can be no doubt that the desertion of a public road for nearly a century, is strong presumptive evidence that the right of way has been extinguished."

While the nonuser of a prescriptive easement, for a period sufficient to create an easement by prescription, is evidence of an intention to abandon the easement, it is open to explanation, and may be controlled by proof that such intention did not exist. *Pratt* v. *Sweetser*, 68 Me., 344. Again, the laying out of a new road near an old road does not necessarily operate a discontinuance of the latter. *Chadwick* v. *McCausland*, 47 Me., 342. Still, voluntary and intentional desertion of a highway, the acquirement of a new road in its place, its travel and recognition by the public, may operate as

an abandonment of the former. Elliott, Roads & Street, Sec. 1174; *Peoria* v. *Johnston*, 56 Ill., 45; *Hartford* v. *New York & N. E. R. Co.*, 59 Conn., 250; *Galbraith* v. *Littiech*, 73 Ill., 209. Acquiesence for even a few years, in the discontinuance of an old road, and the adoption of another, has been held sufficient to· show the abandonment of the old road in the absence of evidence of a contrary intention. *Warner* v. *Holyoke*, 112 Mass., 362; *Pope* v. *Devereux*, 5 Gray, 409; *Hobart* v. *County of Plymouth*, 100 Mass., 159.

From 1672, when the towns were ordered to mark the new road, to 1927, in which year plaintiff commenced this action, was two and a half centuries. There was delay, the historian states, in constructing the new road, but there is no pretense that it was not constructed, opened, traveled by the public, and recognized by the public authorities in the time of the Colonial Government. Furthermore, there seems to have been, on the part of successive owners of the land which the ancient trail had occupied, continual, inclusive, and adverse possession of the easement, reaching further back than living memory can go.

In the light of all the facts, it is clear that the ancient trail or bridle path, if it ever had been a public thoroughfare, was abandoned, so as to defeat the right of the public to use and enjoy it.

Whenever the public interest is relinquished, the owner of the soil is restored to his original dominion over the same. The land, it is sometimes said, reverts to the owner, disencumbered of the public use, but the expression is not altogether accurate. The land does not revert, because there has been no alienation. The public has only been entitled to a certain specific right, the enjoyment of which is incompatible with the éxercise of certain private rights, which are, therefore, necessarily suspended. When, however, the highway is abandoned from the strip of land over which the public has a right of way, the land is discharged of the burden, and the private rights revive. Angell on Highways, Sec. 326; *Fairfield* v. *Williams*, 4 Mass., 427; *Perley* v. *Chandler*, 6 Mass., 454; *Alden* v. *Murdock*, 13 Mass., 256; *Barclay* v. *Howell's Lessee*, 6 Pet., 498, 513, 8 Law ed., 477, 483.

This, however, is not the end of the case. As was pointed out at the beginning, there are the defensive contentions of entry on the location where the trail or path had been, in the exercise of a right

of way resting in certain classes of the public, or personally in the defendant.

The public, as well as an individual, may acquire an affirmative easement, as a right of way, by use of the privilege, under a claim of right, adverse to and acquiesced in by him against whom it is claimed, for at least twenty years. *Rowell* v. *Montville*, 4 Me., 270 ; *Estes* v. *Troy*, 5 Me., 368. Prescription presupposes and is evidence of a previous grant. But a prescriptive right of way, either in the public or the defendant, is not established in this case. Of this, more will be said, following consideration of the defense of custom.

Under the common law of England, a local right, analogous to that of a strict easement, could be proved by immemorial usage in favor of the inhabitants, for the time being, of a particular territory or district. Such a right, unlike a prescriptive right, never was assumed to arise from a grant by the land owner of an easement in it, but to have come, if at all, from some governmental act of a public nature, the best evidence of which had perished, or of which there never had been, as in the case of a charter from some feudal lord or ecclesiastical corporation, a public record. "Custom" was an invention to surmount the incapacity of a fluctuating body, as the inhabitants of a manor or barony, to take by grant.

The defense of a personal right of way by custom was interposed in the cases, cited by counsel for defendant, of *Bethum* v. *Turner*, 1 Me., 111, *Littlefield* v. *Maxwell*, 31 Me., 134, and *Hill* v. *Lord*, 48 Me., 83. The discussions, while interesting, were not made necessary by the controversies. None of the cases, as counsel themselves observe, is abstract authority.

In Maine, there never has been affirmation of the recognition of a right of way by custom. Connecticut, in an informing opinion, to which this opinion acknowledges indebtment, holds that there, no such thing as a customary easement exists. *Graham* v. *Walker*, 78 Conn., 130. See, too, the Massachusetts cases of *Codman* v. *Evans*, 5 Allen, 308, and *Attorney General* v. *Tarr*, 148 Mass., 309. It is unnecessary, on the evidence in the instant case, to dwell upon whether the doctrine of custom obtains in our jurisdiction.

The evidence for the defense, respecting both prescription and custom, falls short of showing other than a permissive use of what, in the words of defendant's sister, is "a place of wild beauty where

people enjoy the scenery," and defendant himself says is "the most attractive thing on the beach."

The owner, fifty years ago, of the locus and adjoining land, began selling lots for cottages. The cottagers (of whom the father of the defendant was among the first) were permitted, without objection, to go generally over all the land. Defendant gave testimony that, from boyhood on, he went on the pathway, not to pass to and from another place or settlement, but for pleasure or recreation. He had frequently seen other persons strolling there. When plaintiff built the wire fence, defendant asked her for a card that he might use the path.

Other witnesses testified to walking the pathway at different times over periods varying from twenty-five to fifty years, before interrupted by the wire fence. "Anybody," said one witness, "walked over it (the path) who wanted to."

In the testimony is no claim of right, *Blanchard* v. *Moulton*, 63 Me., 434, except what might arise from long-continued usage of the path. The usage shown does not establish a claim of right. The character of the land, the manner in which, with regard to steps and turnstiles, it was fenced, the use to which they who went upon it put it, which may have induced the sale of cottage lots, and certainly did no injury, show but permissive use. *Bethum* v. *Turner*, supra; *Mayberry* v. *Standish*, 56 Me., 342; *Littlefield* v. *Hubbard*, 124 Me., 299. The application by defendant, after the building of the wire fence, for leave to go upon the close, is evidence that his previous use was not under a claim of right. *Tracy* v. *Atherton*, 36 Vt., 503.

Judgment is awarded the plaintiff. Agreeably to stipulation in the report, damages are hereby assessed at twenty-one dollars. Costs follow.

*Judgment accordingly.*