Graydon M. SMITH and Nancy H. Smith

v.

David C. DICKSON.

Supreme Judicial Court of Maine.

Jan. 19, 1967.

**632**

John P. Carey, Donald A. Spear, Bath, for appellant.

Richard B. Sanborn, Augusta, for appellees.

WILLIAMSON, Chief Justice.

This complaint in trespass was heard by a Justice of the Superior Court without a jury. The defendant appeals from a judgment for the plaintiffs with damages assessed at $1.00.

The main question is whether there is a public way, sometimes called the "old county road," or "winter ferry" road, legally existing across the plaintiffs' land from the upper cove, so-called, on the Kennebec River north of the plaintiffs' house southerly to Washington Street, a city street in Bath, terminating on the plaintiffs' land.

The defendant admits that he entered on the plaintiffs' land and cut down a chain barring, as he says, a public way which he is lawfully entitled to use both as a member of the public and as an adjacent landowner.

The plaintiffs contend (1) that the "old County road" was not legally established, (2) that even if so established, it has been abandoned, and (3) that the terminus of the "old county road" as laid out was not at the upper cove, but at a cove southerly of the plaintiffs' house.

The Justice in his judgment said in part:

"The real issue is whether the Plaintiffs' real estate is subject to a public easement. The Plaintiffs take the negative argument and the Defendant assumes the affirmative and argues that what he did was to remove an assorted type of obstacle, or obstacles, from a public highway which the Plaintiffs had no right to place thereon.

"The area in issue has a long and interesting history which, of course, involves the various means used by the early settlers of Bath and Woolwich to cross the Kennebec via a ferry, both in summer and in winter. The Defendant claims that ancient records, with markings still to be found on the ground and in the rocks, prove the establishment, never relinquished, of a public easement which crosses the Plaintiffs' property to which he, as a member of the public, now has the right of access. The Plaintiffs contend that the same records, reasonably read and interpreted in conjunction with the laws then applicable, and the physical facts as now existing, do not prove that the so-called 'winter ferry' road was laid out to cross their land; they also contend that, if such was the intention in the early 1800s. the legal requirements were not fullfilled in order to subject this property to the burden of the claimed easement."

\*　　\*　　\*　　\*　　\*　　\*

"This Court has become satisfied that a preponderance of the record favors the proposition that the Plaintiffs' land is not subject today to the burden of any public easement beyond the most recent extension of Washington Street. Tech-

nically, the Defendant is guilty of a trespass, but damages are nominal. Nearly 150 years have passed since ferry boats have crossed the Kennebec at, or near, the general locus here under consideration, and it would seem appropriate, finally, that the owners of this land might occupy it without the sensation of being haunted by the ghosts of an era remembered only in history."

■ The decisive question is whether the finding of abandonment should be sustained under the "clearly erroneous" rule. M.R.C.P., Rule 52; Harriman v. Spaulding, 156 Me. 440, 165 A.2d 47.

We are satisfied (1) that the Justice made no finding fixing the site of the "winter ferry" with the terminus of the "old county road" at either the upper cove as claimed by the defendant, or the cove southerly of the plaintiffs' house; (2) that he made no finding with reference to the legal establishment of the "old county road," and (3) that he found that the "old county road," even if it ever had been legally established, had been lawfully abandoned.

The defendant urges that implicit in the finding of abandonment were findings favorable to his contentions about the location and legal establishment of the "old county road" from the upper cove. The finding of abandonment, however, made unnecessary, albeit not undesirable, the other findings. In short, abandonment on an "even if" basis ended the defense.

The plaintiffs contend that the judgment stands if the evidence warranted findings that the "old county road" was not legally established or that its terminus was not at the upper cove. The argument is that even if the finding of abandonment was clearly erroneous, nevertheless on appeal we must take the evidence in the light most favorable to the plaintiffs. Their position is that the result was correct although the fact of·abandonment may have been found in error.

Given a finding either of location or legal establishment favorable to the plaintiffs, there would have been no necessity of considering abandonment. We are satisfied, as we have indicated, that the Justice reached directly for abandonment treating the other facts as if found in favor of the defendant.

There is no controversy about the location of the adjoining premises of the plaintiffs and defendant on the western bank of the Kennebec River in the northern part of Bath. The plaintiffs' lot is 150 feet on the north and south and 400 feet on the west and on the river. The defendant owns about 175 acres bounded in part by the northerly and westerly lines of the plaintiffs' lot. The common line running westerly from the river cuts through the upper cove in the river largely on the plaintiffs' land. The "old county road" as claimed by the defendant reaches this cove and also the land of the defendant.

Washington Street in 1947 was extended northerly from the north line of one Howe near the "summer ferry" landing south of the plaintiffs' line, a distance of approximately 900 feet to a "dead end" on the plaintiffs' premises near their house and 150 feet more or less from the cove in question.

The "old county road" was laid out in 1814 by a committee duly appointed by the Court of Sessions of Lincoln County and ran from "beginning at the head of a cove on the said upper ferry-ways * * *" by given directions 76 rods southerly "to the publick road leading to & from the summer ferry; * * *." No record of the acceptance of the report and of the establishment of the road by adjudication of the Court of Sessions is in evidence.

The Massachusetts Laws 1786, c. 67, then in force read in part:

"And they [the committee] shall ascertain the place and course of said Road, in the best way and manner they can; which having done, they or the major

part of them shall make return thereof, under their Hands and Seals to the next Court of General Sessions of the Peace to be held in the same County, after the said service is performed; to the end the same may be accepted, allowed and recorded, and afterwards known for a public Highway."

■ The "old county road", therefore, whether it ran from the upper cove north of plaintiffs' house, as defendant claimed, or from a cove south of their house, as plaintiffs claim, was not lawfully established under statute. Commonwealth v. Coombs, 2 Mass. 489. The basis of defendant's justification of what would have otherwise been a trespass is, as we have seen, that the "old county road" ran to the north or upper cove.

■ A presumption that the proceedings were regular under the statute is not available to the defendant. In Pillsbury v. Brown, 82 Me. 450, 454, 19 A. 858, 859, 9 L.R.A. 94, our Court, in upholding a way of the width located and not only so much as had been actually prepared for travel and so used for twenty years, said:

"It is the location *de facto* that by the lapse of time ripens into a location *de jure*. To rest such a result on the presumption of regularity is to rest it on a fiction; and to rest it on the presumption of a dedication would be equally so. We think it would be better to avoid these unnecessary fictions, and let the result rest on a positive rule of law, which, like all limitation laws, has the public good and the public convenience for a foundation. The rule of law is this: that after the lapse of 20 years, accompanied by an adverse use, a location *de facto* becomes a location *de jure*. This way, at the time of the alleged trespass, had been located and opened and used by the public for more than 40 years. The location *de facto,* if not in all particulars regular, had become by lapse of time and use, and the acquiescence of all parties adversely interested, a location *de jure*."

We must consider therefore whether the road was established by use. See Gibbs v. Larrabee, 37 Me. 506; State v. Bunker, 59 Me. 366.

In 1826 a V-shaped parcel with a wide angle and with arms extending into the river was laid out and lawfully established at the cove end of the "old county road" as a public highway. The description reads in part:

"* * * beginning one rod west of the beech tree mentioned in the warrant being the beech tree at the termination of the road laid out January Term 1815; then running north eight degrees East into Kennebeck River, also beginning at the point before mentioned vis, (sic) one rod west of said beech tree and then running South forty seven degrees east into Kennebeck river. * * *"

The road laid out January Term 1815 plainly refers to the road laid out in 1814.

■ The reference to the January Term 1815 in the 1826 proceedings, although the reference was approved by the Court of Sessions, is not, however, sufficient to establish the essential fact of the acceptance and establishment of the old county road in 1814 as a public highway under the 1786 statute. There is still lacking proof of any action by the Court of Sessions upon the report of the 1814 Committee.

■ In 1831 the Bath Ferry Company by eminent domain acquired certain privileges for ferry purposes in the V-shaped parcel described above. The ferry ceased to operate in both the summer and winter locations in the 1830's. The evidence warranted a finding that the "old county road" was legally established by use for over twenty years from 1814. Pillsbury v. Brown, supra.

In 1915 the "old county road" was mentioned as a bound commencing at the river

in a deed to the predecessors in title of both plaintiffs and defendant. In 1915 the land now owned by the plaintiffs and defendant including land lying southerly on the river for several hundred feet came into ownership of one Rowe and subsequently in one Allegrin in 1939.

Commencing in 1940 Allegrin sold several river lots lying southerly of plaintiffs' premises in each instance referring to an "old county road" or "upper Washington Street" crossing the lot. In 1945 Allegrin conveyed to George Olsen the premises subsequently conveyed by Gertrude Olsen to the plaintiffs in October 1964. Allegrin sold the remainder of his land to Kneeland in 1953 who in turn conveyed it to the defendant in 1956. In the two deeds from Allegrin, from whom the plaintiffs and defendant derive their titles, there is no mention of the "old county road" or of any other way as an easement or a bound.

There is no evidence in the record of use of the "old county road," wherever located, from the discontinuance of the ferry in 1837 until the defendant says that he went to the shore from shortly after his arrival in Bath in 1941. There is no evidence that such use by the defendant or by others subsequent thereto was other than by consent of the owner. In short, no rights by adverse user have been created in the public in the past twenty-five years.

■ We turn to the discontinuance or abandonment of the "old county road." There is no evidence of legal discontinuance under the statute. Abandonment may rest, however, on nonuser as well as the creation of a public highway may rest on use.

■■ We are of the view that a century of nonuse of this spur road 76 rods in length running from the "winter ferry" to the road serving the "summer ferry" warrants a presumption of discontinuance or abandonment by the public. The lawful establishment under the statute of the 1826 V-shaped parcel at the ferry landing

as a public highway does not save the 1814 road established by use. With the abandonment of the 1814 road by nonuser, the 1826 V-shaped parcel was in good reason also abandoned. The "V" served no useful purpose except as an extension of the 1814 "old county road" leading to the "summer ferry" road. A court, of course, would not lightly find that the public has abandoned a highway easement acquired either under statute or by use across privately owned land. When the purpose of a road to reach a ferry landing has ended, and when for 100 years and more no one is shown to have reached the shore of the river or land owned by defendant by a road or way within the limits of the 1814 layout, it would seem that the rights of the public were lost.

When there are no private rights requiring the continuance of a public way to be considered, we do not hesitate to say as did the Justice below, in substance, that any easement which the public may have acquired under or by virtue of the 1814 "laying out" and in 1826 and by use ended before the defendant sought to breathe life into the "old county road."

In Piper v. Voorhees, 130 Me. 305, at p. 309, 155 A. 556, at p. 558, we said:

"Like any other easement, a road may be extinguished. Elliott, Roads & Streets (3d Ed.) § 1172; Holt v. Sargent, 15 Gray (Mass.) 97, 101. A cesser for twenty years, unexplained, to use a way originally acquired by use, is regarded as a presumption, either that the former presumptive right has been extinguished in favor of some adverse right, or, where no such adverse right appears, that the former has been surrendered, or that it never existed. Wooster v. Fiske, 115 Me. 161, 98 A. 378.

"In Beardslee v. French, 7 Conn. 125, Hosmer, C. J., speaking for the court said: 'Evidence to prove a highway often consists in showing that the public have used and enjoyed the road; and the uninterrupted use of it, for a considerable

space of time, affords a strong presumption of a grant. On the other hand, the nonuser of an easement of this kind, for many years, is *prima facie* evidence of a release of the right to the person over whose land the highway once ran; and although the precise limit of time in respect of the public, in such cases, has not been established, there can be no doubt that the desertion of a public road for nearly a century, is strong presumptive evidence that the right of way has been extinguished.'

"While the nonuser of a prescriptive easement, for a period sufficient to create an easement by prescription, is evidence of an intention to abandon the easement, it is open to explanation, and may be controlled by proof that such intention did not exist. Pratt v. Sweetser, 68 Me. 344."

*Piper* rested in part upon the laying out of a new road in place of the old as abandonment of the old road by the public. The principle, however, which we apply has facts found in *Piper*. It does not seem unreasonable to conclude that the public ceased to retain any interest whatsoever vitality not dependent upon the precise in a way to the shore of the Kennebec River by virtue of the "old county road" during the century following the discontinuance of the ferry. The finding of abandonment was not "clearly erroneous." 2 Elliott, Roads & Streets §§ 1172–1176 (4th ed.); 2 Am. Law of Property § 9.55; 39 C.J.S. Highways § 131; 25 Am.Jur., Highways § 112.

■ The defendant also contends that as an adjacent landowner he is entitled to use the "old county road" touching, as he says, his land near or at the upper cove. As we have seen, the plaintiffs' and defendant's land came into ownership of Rowe in 1915 and later of Allegrin who sold the Smith lot and the Dickson lot with descriptions not found in the earlier conveyances. Any private right of way which may have existed across the Smith lot ended with merger of lots into one ownership. Allegrin could not have claimed a right of way across Olsen's, now plaintiffs' land, nor may the defendant who takes under Allegrin assert such a claim.

The entry will be

Appeal denied.