STATE OF MAINE                          SUPERIOR COURT
PISCATAQUIS, SS.                        CIVIL ACTION
                                        DOCKET NO RE-08-006

CONAN FURBER,

        Plaintiff,                      RECEIVED & FILED
        v.                      ORDER
GORDON COLBY,                           AUG 26 2010

        Defendant.                      PISCATAQUIS COUNTY
                                        Clerk's Office

Hearing was held and memoranda filed by December 24, 2009. The plaintiff was present and represented by counsel, Sean Farris, Esq., while the defendant was present and represented by counsel, Andrew Sparks, Esq. In this litigation, plaintiff seeks a judgment, pursuant to counts for declaratory judgment, quiet title, and injunctive relief, declaring that the defendant has no right to use the Furber Farm Rd., so-called, and enjoining him from using the road. Defendant has counterclaimed, asking the court to declare that the disputed road is subject to a public easement, or a prescriptive easement that permits his use.

Defendant purchased a parcel of land in Kingsbury, Maine, including blueberry land, in September of 2005. Having a background in the business, he planned to harvest blueberries, using a rough road for access know as the Furber Farm Rd. Plaintiff owns the land on both sides of the road from the point that it departs Rt. 16 to where it enters defendant's parcel. After defendant purchased the parcel he sent a crew to work on the blueberry land. The crew gained access via the Furber Farm Rd., but plaintiff confronted them, insisting that he owned the road, that they didn't have permission to use it, and that they were trespassers. The defendant had purchased the land from Lois Worcester, as personal representative of the estate of her husband, Alton Worcester. As will be described in greater detail, the Worcester family had raked blueberries on the

parcel since 1957, using the Furber Farm Rd. for access. The plaintiff's father became the owner of the Furber parcel in 1956, and upon his death in 1969, his three children, inherited it. The plaintiff eventually acquired his siblings' interests in the property, becoming sole owner.

Abandonment

Plaintiff does not assert that there was a formal county or municipal closure or the Furber Farm Rd. but insists that it was either statutorily abandoned, or abandoned according to the doctrine of common law abandonment.

Plaintiff maintains that The Furber Rd. was statutorily abandoned prior to 1976 because neither the Town of Kingsbury nor County of Piscataquis had maintained the road for 30 or more consecutive years prior to 1976. This argument is based on the applicability of 23 M.R.S.A. § 3028, which provides that there is a rebuttable presumption of abandonment raised if it can be shown that a road has not been kept passable by motor vehicle at town expense for a period of thirty consecutive years. The Court finds that this statute does not apply to the abandonment issues in this case because it was enacted in 1976 and only a retrospective application of the statute could achieve the result argued by plaintiff.[1] When a road is closed by abandonment prior to the effective date of 23 M.R.S.A. § 3028, the closure is controlled by common law and a court cannot apply the provisions of statutory abandonment. *Martin v. Burnham*, 631 A.2d 1239, 1241 (Me. 1993).

---

[1] If the court found that the statutory abandonment statute applied, it would result in the retention of a public easement in the way that was abandoned, which would be of no assistance to plaintiff. According to 23 M.R.S.A. § 3028, a way abandoned pursuant to the presumption has the same status as a road discontinued by a municipality pursuant to 23 M.R.S.A. § 3026. The public retains an easement when a road is closed in this manner. 23 M.R.S.A. § 3026.

Next, the Court turns to the issue of whether the Furber Farm Rd. had been closed according to principles of common law abandonment prior to 1976. Under the doctrine of common law abandonment, " a presumption of a public intent to abandon a road may be raised by evidence of nonuse for 20 years or more, intentional and voluntary desertion of the road, or acquiescence , even for a few years, in the discontinuance of an old road combined with the use of a new road." *Lamb v. Town of New Sharon, 606 A.2d 1042, 1046 (Me. 1992)*. This presumption can be rebutted by other evidence of a contrary intent on the part of the public. *Id.*

Based on the evidence admitted at trial the Court concludes that since approximately 1950 members of the general public have used the Furber Farm Rd. infrequently and that neither the County nor town has maintained it. Members of the Worcester and Hilton family used it for access to their property, including the blueberry land purchased by defendant. Sportsmen used the road occasionally, as did visitors to a small cemetery accessed from the main road by the Furber Farm Rd. Although passable by most vehicles, the road fell into disrepair over the years and there is no evidence that the town maintained it, plowed it in winter, or expended funds to have it maintained. At times it consisted of two parallel ruts surrounded by bushes, but the road was improved privately in the early 1970's by the Diamond Match Company so that its timber harvesters could haul wood on the road. The Worcester and Furbers have also worked to maintain the road and spent sums on maintenance. Based on this description of both the general public's nonuse as well as the town's desertion of the road through lack of maintenance, the Court concludes that the road was abandoned prior to 1976 according to the common law doctrine of abandonment. Although this result may be difficult to reach based on nonuse alone, as argued by defendant, it is a compelling

3

conclusion when lack of public maintenance, as well as nonuse, is considered.[2] As a result of a common law discontinuance, all rights to the former way passed to the owners of the land that abutted the centerline of the way. *Piper v. Vorhees*, 130 Me. 305, 310, 155 A 556, 559 (1931).

Prescriptive Easement

The party asserting a prescriptive easement must prove continuous use, for at least twenty years, under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Glidden v. Belden*, 684 A.2d 1306, 1317 (Me. 1996). "Where there has been unmolested, open and continuous use of a way, for twenty years or more, with the knowledge and acquiescence of the owner of the servient estate, the use will be presumed to have been adverse and under a claim of right." *Jacobs v. Boomer*, 267 A.2d 376, 378 (Me. 1978). (quoting *Burnham v. Burnham*, 130 Me. 409, 156 A. 823 (1931)). Acquiescence has been defined as passive assent or submission to use, as distinguished from the granting of a license or permission in which the case the use can continue only as long as the owner continues to consent. *Pace v. Carter*, 390 A.2d 505, 507 (1978).

The Court finds that for a period of at least twenty years beginning in 1976, members of the Worcester family continuously used the Furber Rd. to conduct

---

[2] This court interprets the "intentional and voluntary desertion" aspect of common law abandonment as the failure of the appropriate public authority to keep a road passable by maintaining it with the use of public funds. In *Lamb*, the court stated that 23 M.R.S.A. 3028, the statute that established the rebuttable presumption of discontinuance by abandonment on a showing that a road had not been kept passable by motor vehicles for a period of 30 consecutive years, merely codified one aspect of the common law abandonment doctrine. *Lamb*, 606 A.2d at 1047. This is an obvious reference to the desertion aspect of the common law principle. In *Shadan v. Town of Skowhegan*, 1997 ME 187, ¶ 5, the lower court's analysis of the common law abandonment doctrine focused heavily on that road's condition and the lack of public expenditure to keep it passable, as well as evidence of nonuse.

4

commercial blueberry activities each August.[3] This use included using the road for access to the blueberry land for land maintenance and raking activities and for transporting the berries after raking. The duration of the use each year was approximately thirty days. No family member sought permission to use the road and no family member received permission. Plaintiff argues that his uncle's installation of a sign at the beginning of the Furber Farm Rd. that says "pass at your own risk" and the installation of a gate in the same general location is evidence of permissive use. The Court disagrees. The wording on the sign does not constitute a specific grant of permission, but only serves to indicate that its installer was attempting to absolve himself of liability if a person were injured while on the road. The gate, installed in 1990, may have been erected to exclude intruders, but was totally ineffective in preventing the Worcesters from using the road. The Court concludes that either it wasn't locked, or was easily circumvented.

Based on the above analysis, the Court finds that the defendant, pursuant to his counterclaim, has established the existence of a prescriptive easement over that portion of the defendants' land known as the Furber Farm Rd. that is necessary to gain access to his blueberry field. He has proved continuous use of the discontinued Furber Farm Rd. by his predecessors in title for at least twenty years, under a claim of right adverse to the owner, by a use so open, visible, notorious and uninterrupted that knowledge and acquiescence is presumed.

---

[3] Use prior to 1974 would not have been adverse because the Furber Rd. remained a public way until then.

5

The entry is:

Judgment for the defendant on Counts I, II, and III of plaintiff's complaint.

Judgment for counterclaim plaintiff Colby on Count II of his counterclaims and he shall be awarded his costs. Judgment for counterclaim defendant Furber on counterclaims I and III.[4]

Dated: August 25, 2010

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

---

[4] The Court is not certain that Count III and Count II allege different causes of action. To the extent that Count III alleges a different cause of action, it fails.

6