Stephen and Palmina PACE

v.

Wallace CARTER.

Supreme Judicial Court of Maine.

Aug. 11, 1978.

Silsby & Silsby by Herbert T. Silsby, II (orally), Ellsworth, for plaintiff.

Hale & Hamlin by Barry K. Mills (orally), Blue Hill, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

The parties to this action are abutting landowners. A dispute about the use of a driveway across the land of appellants Pace gave rise to the instant complaint, filed on August 19, 1974, in which the Paces sought an injunction against the Carters' further use of the driveway and compensation for water damage to the Paces' home alleged to have been caused by the Carters' grading and filling the driveway. The Carters denied liability for any damages and counterclaimed, seeking a declaration that they had acquired a prescriptive easement for use of the driveway.

By agreement with both parties reserving the right to object to the acceptance of a final report, the Superior Court ordered a referee to hear the case and make findings of fact and conclusions of law pursuant to Rule 53, M.R.Civ.P. After hearing the testimony of both sides, the referee concluded that the Carters had acquired a prescriptive easement in the disputed driveway. He also found that the evidence presented did not establish the claim that the Carters had caused damage to the Paces' home. From the Superior Court's adoption of the referee's report and from entry of judgment upon it the plaintiffs appealed.

From the evidence, the referee found the following facts: Until early 1953, the Carters had used the disputed driveway only casually and intermittently to reach their own lot, which they had acquired in 1936. In the spring of 1953, they began construction of a house on their lot and in the spring of 1954 their use of the driveway became intensive. In addition to the Carters' nearly daily use, trucks traversed the driveway to deliver building materials and haul out rocks and timber. Since the completion of their home in November, 1954, the Carters have used the driveway continuously as the primary means of access to their lot. Service trucks have been using the driveway to deliver oil, gas and firewood to the Carter home.

In 1954, the present Pace property was owned and occupied by a Mrs. Shepard, the Paces' predecessor in title. There was testimony that in the spring of 1954 Mr. Carter conceived the idea of relocating part of the driveway to make easier the passage of trucks delivering building material. The location of most of the driveway was to remain, and has remained, unchanged. Mr. Carter testified that although he had used the driveway under claim of right since 1936, he thought that before relocating a part of it which he and Mrs. Shepard both used, he should get the "permission" of Mrs. Shepard. Mr. Carter testified that when he presented his plan to Mrs. Shepard, she replied, in substance, "Do what you wish. It is your driveway." In his final report the referee, expressly finding that Mrs. Shepard had made such a reply, characterized her statement as a "parol grant to the defendants of the way as changed."

Since an oral grant of a permanent easement is unenforceable,[1] the appellees did not base their right to use the driveway on an oral grant of an easement; instead, they based their claim on the existence of a prescriptive easement arising from their continuous, open, adverse use of the driveway under claim of right for over twenty years with the acquiescence of the owners.

1. See Jewett v. Hussey, 70 Me. 433, 436–437 (1879). The statute of conveyances, 33 M.R. S.A. § 162 (1964), requires the transfer of an estate in land greater than a tenancy at will to be in writing. Although easements are not estates, technically speaking, the statute has been treated as including them, presumably on grounds of policy.

In *Jacobs v. Boomer,* Me., 267 A.2d 376, 378 (1970), we reiterated the elements essential to the ripening of a prescriptive easement, quoting with approval from our opinion in *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 744 (1916), as follows:

"A prescriptive easement is created only by a continuous use for at least twenty years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed."

■ The owner's acquiescence in an adverse use is essential in Maine to the establishment of a prescriptive easement.[2] "Acquiescence" has been judicially defined as passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it. *See Jacobs v. Boomer,* supra, at 378.

The referee concluded that Mrs. Shepard's statement to appellee Carter amounted to a parol grant of the driveway "as changed." Mrs. Shepard's statement seems to suggest a belief on Mrs. Shepard's part that the Carters already had rights in the driveway and to indicate a purpose to grant rights of use that the Carters had not theretofore enjoyed. The referee's conclusion should perhaps be understood as relating to the relocated part of the driveway, to which any rights the Carters might have acquired by prior express grant or long continued use might not have extended. The referee's inference of a parol grant, whether applicable to all or only the relocated part of the driveway, was accompanied by a finding that the use had continued with the acquiescence of the appellants and their predecessors in title for more than twenty years, the appellants having made no objection until after the prescriptive period had elapsed. The referee concluded that Mrs. Shepard's statement manifested her acquiescence in the Carters' use of the driveway as changed, as a matter of right, and that she was not permitting or licensing the use as a matter of grace.

■ To the extent that the Carters used all or any part of the driveway under a parol grant, their use was adverse to Mrs. Shepard and her successors in title. The fact that a parol grant is attempted may be probative of a landowner's state of mind at the time adverse use of his property is being made. A parol grant may manifest an intention on the part of the would-be grantor that the grantee is to enter the property under a claim of right based on the supposed grant, rather than pursuant to the grantor's permission or license. Likewise the grantee's use of the land pursuant to a parol grant may manifest a claim of right hostile to the grantor's full ownership of all rights in the property. For purposes of proving a prescriptive easement, evidence of an unenforceable parol grant of an easement tends to show the landowner's acquiescence in the use that the grantee makes of the land within the terms of the grant. *See Jewett v. Hussey,* 70 Me. 433, 435, 436–437 (1879).[3]

■ There was sufficient evidence to support the referee's finding that the Carters used the driveway under claim of right acquiesced in by the owners of the Shepard-Pace lot. That finding was supported by evidence and is not clearly erroneous. Rule 53(e)(2), M.R.Civ.P.; *Cunningham v. Cun-*

---

2. On this point, the acquisition of an easement by prescription differs, in Maine, from the acquisition of title by adverse possession. *Dartnell v. Bidwell,* 115 Me. 227, 98 A. 743 (1916). Sections 812 and 813 of title 14 of the Revised Statutes have no counterparts in the provisions bearing on acquisition of title by adverse possession. *See* 14 M.R.S.A. §§ 801–811, 814–816.

3. The comparable issue in the law of adverse possession was settled in the same way in *Nevells v. Carter,* 122 Me. 81, 119 A. 62 (1922). In its opinion the court said,

"It is thus clear that a parol grant of real estate is ineffectual to change the ownership of the property; the tenants must rest then their claim of title upon an actual entry as of right, and adverse possession. The evidence in relation to the grant is immaterial, except as it bears on the character of Edbert's occupation." 122 Me. at 84, 119 A. at 63.

*ningham,* Me., 314 A.2d 834 (1974). It must therefore stand.

Although the appellants acquired title to Mrs. Shepard's property by June 11, 1973, they did not attempt to bar the Carters' use of the driveway until June 15, 1974. This later date was approximately twenty years and one month after Mrs. Shepard acquiesced in the adverse use of the driveway as changed in the spring of 1954. The driveway passes within ten feet of the Pace home, and the appellants do not contend that they were unaware of the Carters' continuing use of the driveway from June, 1973, when the Paces purchased their home, until June, 1974, when they attempted to bar further use.

The record establishes that the Carters did not take up residence in their newly constructed home until November of 1954. Appellants urge this Court to hold, as a matter of law, that the use to which the driveway was put after November, 1954, was so different from its prior adverse use that it constituted a new kind of use necessitating the commencement of a new twenty-year period of prescription. Under this theory the period of prescription would have run until November, 1974, and appellants' action for trespass would have been instituted in time to defeat the ripening of an easement.

In support of their position the appellants cite numerous decisions holding that when an easement is obtained by adverse use alone, its extent must be measured by its use. *See MacKenna v. Inhabitants of Searsmont,* Me., 349 A.2d 760 (1976); *Pillsbury v. Brown,* 82 Me. 450, 454, 19 A. 858 (1890). The uses to which the driveway was put, before and after November, 1954, were not so dissimilar in purpose, burden and physical characteristics that the referee was obliged to treat them as legally distinct uses. Since the spring of 1953 the general purpose of the adverse use of the Pace driveway has remained vehicular access to the Carter lot. In the fall of 1954 the specific reason for vehicular access changed from construction of a home to maintenance and use of a home. Such a minor

variation in purpose should not be of controlling importance. *See Restatement of Property* § 478 (1944).

The referee heard uncontroverted testimony that from the spring of 1954 to the fall of 1954 Mrs. Shepard's driveway, as changed, was used by the Carters on a daily basis as the primary means of access to the lot on which their house was being built. During that period numerous heavy vehicles, including a platform truck, traversed the drive in order to deliver building materials and to remove timber and earth. After November, 1954, the defendants used the driveway on a nearly daily basis as the primary means of access to the lot on which their home had been built. Since that time trucks have continued to use the driveway to make deliveries of oil, gas and firewood. The physical activities constituting the use, and the extent of the burden of the use, continuously imposed on the Pace-Shepard driveway have remained essentially unchanged since early 1954, and the referee did not err in deciding that they constituted a single continuous use. There being sufficient evidence in the record to establish the other essential elements of a ripened prescriptive easement, the referee's conclusion must be affirmed.

■ Appellants assert that the referee erred in concluding that they had failed to meet their burden of proving, by a fair preponderance of the evidence, that the damage to their basement resulted from the actions of the defendants. The referee considered testimony offered by both parties on this question. Tested by the appropriate standard of appellate review, the referee's finding of fact—*i. e.,* the absence of causation—was not clearly erroneous.

The entry is:

Appeal denied.

Judgment affirmed.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.