**MUTTON HILL ESTATES, INC.**

v.

**TOWN OF OAKLAND, et al.**

Supreme Judicial Court of Maine.
Argued Sept. 13, 1984.
Decided Feb. 21, 1985.

Nale & Nale, John E. Nale (orally), Waterville, for plaintiff.

Daviau, Jabar & Batten, John P. Jabar (orally), Joseph M. Jabar, Waterville, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

VIOLETTE, Justice.

This case comes before the Court for a second time. *See Mutton Hill Estates, Inc. v. Town of Oakland,* 468 A.2d 989 (Me.1983) ("*Mutton Hill I*"). In *Mutton Hill I,* we remanded to the Superior Court, Kennebec County, with specific instructions for that court to follow. 468 A.2d at 993. The plaintiff appeals from the decision of the Superior Court upon remand, contending, *inter alia,* that the presiding justice failed to comply with the instructions given by this Court in *Mutton Hill I.* We agree with this contention and sustain the plaintiff's appeal.

The plaintiff, Mutton Hill Estates, Inc., is a developer seeking approval for its plan to develop a twelve-lot residential subdivision in Oakland.[1] Its attempts to gain such approval before the Planning Board and the Board of Appeals of the Town of Oakland were unsuccessful. In *Mutton Hill I,* we upheld a determination by the Superior Court that certain procedural irregularities involving the Oakland Planning Board rendered the Planning Board's decision on the plaintiff's application defective. 468 A.2d at 992. Also, because of the unique circumstances presented in this case, we approved the Superior Court's decision not to remand the matter for another hearing before the Planning Board. *Id.* at 992–993. We found improper, however, the Superior Court's order directing the Planning Board to approve the plaintiff's application without any further proceedings. 468 A.2d at

991, 993. We did so because, at that point, there existed "no valid determination whether Mutton Hill's subdivision proposal complies with local ordinances and state law." *Id.* at 993. This Court then made the following statement:

> We therefore remand the matter to the Superior Court for a nondeferential review of the record created before the Planning Board to determine [whether the proposal complies with local ordinances and state law]. If the court finds the Mutton Hill proposal demonstrates *prima facie* compliance with local ordinances and state law, the court shall enter its order remanding the matter to the Planning Board for issuance of an order granting approval of the proposal. If the court finds conversely, it shall enter its order affirming the decision of the Board of Appeals.

*Id.* Accordingly, the Court vacated the judgment and remanded the matter to the Superior Court. *Id.*

On remand, the presiding justice noted that he was conducting a *"de novo review"* of the evidence compiled before the Planning Board. The justice observed that the burden rested with the plaintiff to prove that its proposal satisfied the requirements of local ordinances and state law. The Superior Court found that, on the record before it, the plaintiff successfully carried this burden except as to two criteria: the avoidance of undue water pollution, and the avoidance of undue soil erosion.[2] In these

---

1. A more detailed statement of the facts involved in this litigation appears in *Mutton Hill I. See* 468 A.2d at 990–91.

2. *See* 30 M.R.S.A. § 4956(3)(A), (D) (1978); Oakland, Me., Subdivision Ordinance § 5(F) (July 9, 1979). Section 4956(3) of title 30, in pertinent part, provides:

    **3. Guidelines.** When promulgating any subdivision regulations and when reviewing any subdivision for approval, the planning board, agency or office or the municipal officers, shall consider the following criteria and before granting approval shall determine that the proposed subdivision:

    **A.** Will not result in undue water or air pollution. In making this determination it

shall at least consider: The elevation of land above sea level and its relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal; the slope of the land and its effect on effluents; the availability of streams for disposal of effluents; and the applicable state and local health and water resources regulations;

    . . . . .

    **D.** Will not cause unreasonable soil erosion or reduction in the capacity of the land to hold water so that a dangerous or unhealthy condition might result;

    . . . .

Section 5(F) of the Oakland Subdivision Ordinance states:

two areas, the court stated, the plaintiff's proof did not meet the standards necessary for approval of its application. The presiding justice was not persuaded by the conditional approval granted to the plaintiff's proposal by the Board of Environmental Protection ("BEP").[3] He observed that, under section 5(B) of the Oakland Subdivision Ordinance, the Planning Board was free to deny a subdivision proposal even though the applicant had already obtained BEP approval. *See* Oakland, Me., Subdivision Ordinance § 5(B) (July 9, 1979).[4] The Superior Court "[made] particular note of the very equivocal testimony of the Department of Environmental Protection expert" in the case before it. The presiding justice concluded that, because there was insufficient evidence that the plaintiff's proposal would not cause undue water pollution, or unreasonable soil erosion or reduction in the capacity of the land to hold water so that an unhealthy condition may result, the proposal did not comply with local ordinances and state law. *See* 30 M.R.S.A. § 4956(3)(A), (D) (1978); Oakland, Me., Subdivision Ordinance § 5(F) (July 9, 1979).[5] Accordingly, the Superior Court affirmed the decision of the Oakland Board of Appeals.

In remanding this case to the Superior Court in *Mutton Hill I,* we instructed that court to conduct a nondeferential review of the record created before the Planning Board. 468 A.2d at 993. By this command, we intended that the Superior Court examine the evidence in the position of a fact finder, rather than in an appellate role where it would be limited to inquiring whether there was substantial evidence supporting the Planning Board's decision. *See id.* at 992. The Superior Court correctly followed this instruction. We further instructed the Superior Court, however, to find for the plaintiff if the Mutton Hill proposal demonstrated *prima facie* compliance with local ordinances and state law. *Id.* at 993. The Superior Court misconstrued this portion of our remand order.

A party makes out a *prima facie* case when the evidence presented is equivalent to that necessary to survive an opponent's motion for a directed verdict. *See* 9 J. Wigmore, *Evidence in Trials at Common Law* § 2494, at 379 (Chadbourn rev. ed. 1981). Accordingly, to determine whether a plaintiff has satisfied a *prima facie* burden, a court "must view the evidence, 'including every justifiable inference,' in the light most favorable to the plaintiff so that [the court] may decide whether by any reasonable view of this evidence a [decision] for the plaintiff could be sustained." *Boetsch v. Rockland Jaycees,* 288 A.2d 102, 104 (Me.1972), *quoted in Packard v. Central Maine Power Co.,* 477 A.2d 264, 267 (Me.1984). The court

---

**F. Guidelines for Reviewing Subdivisions in Subdivision Law.** In reviewing any proposed subdivision, the Planning Board shall consider the criteria set forth in the Guidelines contained in the Subdivision Law, Title 30, M.R.S.A., section 4956, and before granting approval shall determine that they have been, or will be met. In all instances, the burden of proof shall rest with the applicant.

**3.** The BEP is an arm of the Department of Environmental Protection. *See* 38 M.R.S.A. § 341 (Supp.1984). Under the Site Location Development Act, 38 M.R.S.A. §§ 481–490 (1978 & Supp.1984), the plaintiff's proposed subdivision required BEP approval. *See* 38 M.R.S.A. §§ 482(2), (5), 483(2) (Supp.1984).

**4.** Section 5(B) provides:
**B. Conformance with other Laws, Regulations.** The proposed subdivision shall be in conformance with all pertinent local, State and federal ordinances, statutes, laws, and regulations. If the proposed subdivision meets the definition of a subdivision as defined in the Site Location Act, Title 38, M.R.S.A., Section 482, the subdivider must secure the approval of the Board of Environmental Protection and the Planning Board. When a proposed subdivision requires approval of the Planning Board and the Board of Environmental Protection, each review may be conducted simultaneously. However, each review will be conducted independently, and *the Planning Board may deny approval of the subdivision even though the Board of Environmental Protection has granted an approval under the provisions of the Site Location Act.* (emphasis added).

**5.** *See supra* note 2.

should generally avoid determining the credibility of witnesses when deciding whether the plaintiff has presented the necessary quantum of proof. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 50.2, at 664–68 (2d ed. 1970).

■ In this case, the Superior Court went beyond determining whether the plaintiff had presented *prima facie* proof of compliance with state law and local ordinances, despite our instruction to the contrary in *Mutton Hill I.* 468 A.2d at 993. The presiding justice did not determine whether "under *any reasonable view* of [the] evidence a [decision] for the plaintiff *could* be sustained." *Boetsch,* 288 A.2d at 104, *quoted in Packard,* 477 A.2d at 267 (emphasis added). Moreover, rather than viewing the evidence in the light most favorable to the plaintiff, the presiding justice undertook to resolve issues of credibility, "mak[ing] particular note of the very equivocal testimony" of a representative of the Department of Environmental Protection, an agency that had granted conditional approval of the plaintiff's subdivision proposal.[6] Because the Superior Court imposed a much more stringent proof requirement upon the plaintiff than the one we ·specified in our remand order, we vacate the judgment of that court.

■ Our own review of the record compiled before the Oakland Planning Board reveals that the plaintiff has demonstrated *prima facie* proof of compliance with local ordinances and state law. We note particularly findings made by the BEP in ·approving the Mutton Hill proposal. These findings indicate that the proposed subdivision would cause neither undue water pollution, nor unreasonable soil erosion or reduction in the capacity of the land to hold water so that an unhealthy condition may result.[7] Further, the BEP approval imposes certain conditions upon the Mutton Hill project[8] to ensure against such prob-

---

**6.** *See supra* note 3 and accompanying text.

**7.** After reviewing the Mutton Hill proposal pursuant to 38 M.R.S.A. § 483(2) (Supp.1984), *see supra* note 3, the BEP made the following findings:

1. Applicant proposes the development of a single family residential subdivision on 24 acres. Lot sizes range from 1.0 to 1.7 acres. The project includes construction of approximately 2,100 linear feet of roadway, a permanent sediment pond and two separate community septic disposal systems to serve Lots # 1, 3, 11 and 12 and Lots 4–7, 9 and 10. The project is the first phase of a potential 150 lot 390 acre subdivision.

2. The applicant has provided *adequate evidence of financial capacity and technical ability to meet* air and *water pollution control standards.*

3. The applicant has made *adequate provision for* solid waste disposal, the control of offensive odors, and *the securing and maintenance of sufficient and healthful water supplies.*

4. The applicant has made adequate provision for traffic movement of all types out of or into the development area.

5. The applicant has made adequate provision for fitting the development harmoniously into the existing natural environment and *the development will not adversely affect* existing uses, scenic character or *natural resources in the municipality or in neighboring municipalities.*

6. The proposed development will be built on *soil types which are suitable to the nature of the undertaking provided:*

A. An area of suitable soils is reserved for complete replacement of both community septic systems.

B. The community septic systems are completely installed utilization of available space.

C. The sediment and erosion control plans are carefully designed and implemented to protect the water quality of McGrath Pond.

7. The condition of soils of this project is such that special and possibly significant engineering may be required to assure that buildings, septic systems and other improvements to the property can be constructed without unusual future maintenance problems.

(emphasis added). The BEP then approved the Mutton Hill application.

**8.** The fact that the BEP approval of the Mutton Hill proposal is subject to conditions does not indicate that the BEP had any unusual reservations concerning the merits of the proposed subdivision. The BEP is free to grant approval "upon such terms and conditions as are appropriate and reasonable." 38 M.R.S.A. § 483(2) (Supp.1984); *see In re Ryerson Hill Solid Waste Disposal Site,* 379 A.2d 384, 387–88 (Me.1977); *In re Belgrade Shores, Inc.,* 371 A.2d 413, 416 (Me.1977). Indeed, some of the conditions imposed upon the Mutton Hill project are labeled

lems in the future.[9] The BEP reaffirmed its approval of the plaintiff's proposed subdivision when it denied a petition for reconsideration filed by residents of the Town of Oakland. We agree with the Superior Court that this BEP approval does not compel approval of the proposal by the Oakland Planning Board. *See* Oakland, Me., Subdivision Ordinance § 5(B) (July 9, 1979).[10] We conclude, however, that, based on the evidence compiled before the Oakland Planning Board, particularly the BEP's assessment of the Mutton Hill subdivision proposal, a finding that the plaintiff's proposed subdivision complies with local ordinances and state law *reasonably could be sustained.* *See* 30 M.R.S.A. § 4956 (1978); Oakland, Me., Subdivision Ordinance (July 9, 1979). Accordingly, we determine that the plaintiff did demonstrate *prima facie* proof of compliance with local ordinances and state law.

We therefore remand to the Superior Court for entry of an order remanding to the Oakland Planning Board for issuance of an order granting approval of the plaintiff's subdivision proposal. As we determined in *Mutton Hill I*, the unique circumstances of this case justify such extraordinary relief in lieu of a new hearing for the plaintiff before the Planning Board. 468 A.2d at 992–93.

The entry is:

Judgment vacated.

Remanded to Superior Court for entry of an order remanding to the Oakland Planning Board for issuance of an order granting approval of the plaintiff's subdivision proposal.

All concurring.

by the BEP as "Standard Conditions of Approval." Moreover, the Oakland Subdivision Ordinance expressly allows for approval of a subdivision subject to future satisfaction of conditions. The ordinance provides that the Planning Board "before granting approval shall determine that the [relevant criteria] have been or *will be* met." Oakland, Me., Subdivision Ordinance § 5(F) (July 9, 1979) (emphasis added).

9. "[T]he conditional nature of the [BEP] approval precludes consummation of [the Mutton Hill] subdivision if the facilities prove unacceptable." *In re Belgrade Shores, Inc.,* 371 A.2d 413, 418 (Me.1977).

10. *See supra* note 4.