1997 ME 161

**S.D. WARREN CO.**

v.

**Michael VERNON.**

Supreme Judicial Court of Maine.

Argued June 11, 1997.

Decided July 21, 1997.

---

Court (Somerset County, *Alexander, J.*) in favor of plaintiff S.D. Warren Co. (Warren). The court held that Warren had acquired a private prescriptive easement across defendant's land, and that a public easement also exists. Vernon contends that Warren failed to prove the required elements for either easement. Warren cross-appeals, asserting that the court erred by determining that its easement does not include the right to transport herbicides. We affirm that portion of the judgment finding a private easement, but vacate the remainder.

[¶ 2] The evidence presented to the court may be summarized as follows: Vernon owns a parcel of land in Brighton Plantation. Warren owns the property surrounding Vernon's land, and there are several other parcels to the north that are owned by other individuals. The Moody Corner Road runs north through Vernon's land, Warren's land, and to the other parcels. The road was a town way until it was discontinued in 1927 by the Somerset County Commissioners. Warren continued to use the road, however, to access its land and haul wood, and the other landowners used the road to reach their property. Hunters also traveled on the road to access land around Vernon's parcel.

[¶ 3] Vernon purchased his property on the road in 1980 and built a house. He observed Warren using and maintaining the road across his land beginning in 1981. In 1990, he saw several Warren trucks drive by his house carrying 55-gallon drums. He followed the trucks and discovered that Warren was spraying its land with an herbicide carried in the drums. The next day Vernon blocked the road with his pickup truck. Warren commenced this action against Vernon asserting that it had acquired rights to use the road by prescription. The court determined that there was a public easement over the road and that Warren had acquired a private easement as well. The court concluded, however, that the scope of the easement did not include the right to transport herbicides over the road. Both parties appeal.

Waldemar G. Buschmann (orally), Weeks & Hutchins, Waterville, for plaintiff.

Kim M. Vandermeulen (orally), Vandermeulen, Goldman & Allen, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendant Michael Vernon appeals from the judgment entered in the Superior

I.

[¶ 4] Vernon contends that there is insufficient evidence to establish a private prescrip-

tive easement. Specifically, Vernon argues that Warren's use was not continuous, that there is no evidence in the record that he or his predecessors acquiesced to Warren's use of the road, and that Warren's use was not adverse. We disagree.

[¶ 5] "The party asserting a prescriptive easement must prove continuous use, for at least twenty years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed." *Glidden v. Belden,* 684 A.2d 1306, 1317 (Me.1996)(quotations omitted). The trial court's factual findings regarding the elements of a prescriptive easement will be upheld unless they are clearly erroneous. *See Gutcheon v. Becton,* 585 A.2d 818, 821 (Me.1991)(continuity of use); *Jacobs v. Boomer,* 267 A.2d 376, 380 (Me.1970)(adversity of use); *Pace v. Carter,* 390 A.2d 505, 507–08 (Me.1978)(acquiescence). "Even though the evidence could support an alternative factual finding, that alone does not compel reversal of the findings below when they are supported by competent evidence." *Blackmer v. Williams,* 437 A.2d 858, 862 (Me. 1981).

### Continuous Use

■ [¶ 6] There is competent evidence in the record to support the court's finding that Warren's use of the road was continuous for twenty years. We stated in *Great Northern Paper Co., Inc. v. Eldredge,* 686 A.2d 1075, 1077 (Me.1996), that:

> [A] claimant's use need not be constant to be continuous. Intermittent use may be continuous for purposes of establishing a prescriptive easement if it is consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement.

(Citations omitted). According to Harry Melcher, a local resident who worked for Warren beginning in 1946, the company's logging operations along the road began in the 1930s. He testified that he remembered traveling with his grandfather, who was su-

perintendent of Warren's northern division, as early as 1931 to check on cutters working on Warren's land north of Vernon's property. Melcher testified that Warren hauled timber over the road in the 1930s, '40s, and '50s. He remembered patching holes in the road with Warren's gravel sometime between 1939 and 1940. He traveled over the road at least two to three times each year between 1931 and 1960. Melcher's father, two uncles, and brother were also Warren employees who traveled over the road with Melcher at various times while working for Warren. Melcher recalled a cutting operation led by George Wyman in the 1950s, and Melcher himself ran a cutting operation north of Vernon's land from 1968 to 1969.

[¶ 7] Norman Hayden testified that he cut wood for Warren in the area north of Vernon's land beginning in the 1940s. He purchased property along the road in 1971 and at the time the southern part of the road was covered with alders but was passable. Two Warren employees, James Pinkerton and Douglas Denico, testified that they used the road at least annually beginning in 1969.

[¶ 8] Warren continued to use the road during the 1980s and until Vernon blocked the way in 1990. Although Warren's use of the road was not constant during the decades after the road was discontinued in 1927, there is sufficient evidence in the record to support the court's finding that Warren's use was continuous for purposes of establishing a prescriptive easement. *Great Northern Paper Co.,* 686 A.2d at 1077.

### Acquiescence

■ [¶ 9] "Acquiescence implies 'passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it.'" *Town of Manchester v. Augusta Country Club,* 477 A.2d 1124, 1130 (Me.1984) (quoting *Pace v. Carter,* 390 A.2d 505, 507 (Me.1978)). A court "may presume that the owners acquiesced to the claimant's use if the claimant can show that the use was open, notorious, and uninterrupted." *Taylor v. Nutter,* 687 A.2d 632, 635 (Me.1996). Here, the court

determined that Warren's use was "sufficiently regular, open, notorious, and adverse to establish a private prescriptive easement." There is competent evidence in the record to support the court's finding that Warren's use was sufficiently open and notorious to create a presumption that Vernon and his predecessors acquiesced in Warren's use of the road. The witnesses testified that the road was visible, that Warren used the road for logging in the decades after the road was discontinued, and that Warren employees used the road to access Warren's property at least once a year beginning in 1969.

### Adverse Use

[¶ 10] Vernon contends the court's finding that Warren used the road adversely is clearly erroneous because George Wyman, who owned Vernon's land from 1953 to 1971, was the foreman for one of Warren's cutting operations during the 1950s. Vernon argues that Wyman's ownership created implicit consent to Warren's use of the road by Wyman's crews.

[¶ 11] Use is adverse "when a party ... has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding his claims entirely, using it as though he owned the property himself...." *Blanchard v. Moulton*, 63 Me. 434, 437 (1873). Contrary to Vernon's assertion, the court was not compelled to find that Wyman's ownership of Vernon's parcel and his simultaneous use of the road during hat time was permissive. Rather, the court could have found that Wyman believed that Warren had a right to use the road, *Blackmer*, 437 A.2d at 862, or that a prescriptive easement was established prior to Wyman's ownership of the land. Either alternative is supported by competent evidence.

### II.

[¶ 12] Warren contends the court erred when it determined that its private prescriptive easement does not include the right to transport herbicides. It correctly contends that the court employed an improper standard for determining whether such use was within the scope of the easement. The court concluded that "use of the right-of-

way for passage of herbicides is not established by prescription" because Warren failed to prove that such use was "absolutely essential to its logging and woods work practices" and because Vernon reasonably believed "that usage of the right-of-way to transport herbicides poses significant risks different from other uses of the right-of-way...."

[¶ 13] "[T]he permissible uses of an easement acquired by prescription are necessarily defined by the use of the servient land during the prescriptive period." *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me.1991) (quoting *MacKenna v. Town of Searsmont*, 349 A.2d 760 (Me.1976)). When a court is asked to determine whether a particular use overburdens a prescriptive easement, it "must balance the prior use of the right of way established during the prescriptive period against any later changes in the method of use that unreasonably or unforeseeably interfere with the enjoyment of the servient estate by its current owner." *Gutcheon*, 585 A.2d at 822. A change in the use of the dominant estate will overburden a prescriptive right of way when the change manifests itself "in some greater independent burden on the servient estate." *Id.*

[¶ 14] The court erred as a matter of law in its determination of the scope of Warren's easement. The road has been used for years to support Warren's commercial forestry operation. Such an operation necessarily involves the transportation of potentially objectionable and hazardous materials. There is no evidence to support the conclusion that the transportation of 55–gallon drums along the woods road results in any greater independent burden than has existed throughout the prescriptive period.

### III.

[¶ 15] Finally, Vernon contends the court erred by concluding that Warren has a right to use the road by virtue of a public easement. The court specifically found that the road was continuously used to access surrounding land for hunting and fishing, logging and other woods operations, and by landowners to access their property. These

uses, the court determined, "were undertaken without specific permission of any landowners and in a manner that was open, notorious, and adverse to anyone who might assert title or other right to bar use of the right-of-way."

[¶ 16] "The requirements for creation of a public way by prescription parallel those for the creation of a prescriptive easement." *Comber v. Plantation of Dennistown*, 398 A.2d 376, 378 (Me.1979) (citation omitted). We stated in *Town of Kennebunkport v. Forrester*, 391 A.2d 831, 833 n. 2 (Me.1978), that for purposes of establishing a public prescriptive easement, "[t]he test of a public use is not the frequency of the use, or the number using the way, but its use by people who are not separable from the public generally." In addition, "Maine stands with the minority ... with regard to creation of public recreation easements by prescription in wild and uncultivated land, applying the rule that such open and continuous use raises a rebuttable presumption that the use was permissive." *Augusta Country Club*, 477 A.2d at 1130. *See also Forrester*, 391 A.2d at 833 (use by public for hunting or recreation is not sufficient to establish the adverse use essential to a prescriptive easement).

██ [¶ 17] The uses found by the trial court do not constitute adverse use by the general public sufficient to create a public prescriptive easement. The only evidence regarding the general public's use of the road after the town's discontinuance in 1927 was the testimony of Harry Melcher and Roland Tozier, who stated that they used the road for hunting purposes, and the testimony of Thomas Dillon, an independent logger who used the road in the late 1980s. Use of the road by the public for hunting or recreation is presumed permissive, *Augusta Country Club*, 477 A.2d at 1130. Dillon's recent use of the road for logging is not sufficient to support a finding of adverse public use for twenty years. Furthermore, although the trial court found that abutting landowners used the road, their travel does not constitute use by people who are "not separable from the public generally." *Forrester*, 391 A.2d at 833 n. 2. Thus, there is no evidence to support the court's finding of a prescriptive public easement.

The entry is:

The portion of the judgment finding a private prescriptive easement is affirmed. The remainder of the judgment is vacated.