1997 ME 187

**Philip SHADAN**

v.

**TOWN OF SKOWHEGAN, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 16, 1997.

Decided Aug. 11, 1997.

Jeffrey P. Towne, Waterville, for plaintiff.

John W. Youney, Merrill, Hyde & Fortier, Skowhegan, for Jeff & Judy Bowzer.

Richard S. Sterns, Eames & Sterns, Skowhegan, for Town of Skowhegan.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

■■ Philip Shadan appeals from the judgment entered in the Superior Court (Somerset County, *Alexander, J.*) following the court's determination that Shadan had no right of way over an abandoned road that passed by his property and that he was not entitled to relief on his illegal zoning and taking claims against the Town of Skowhegan. We affirm the judgment.

## I.

[¶ 2] Philip Shadan owns two parcels of land in the Oak Pond Stream Subdivision in Skowhegan. Shadan's land is abutted by the Richardson Road, so-called, an ancient road that runs adjacent to his property and through the land of his neighbors, the Bowzers. Soon after purchasing his land Shadan began using the Richardson Road to access his property. Although the Bowzers initially gave him permission to use the road, they eventually erected a barrier across the road to prevent Shadan from using it and complained to the police when Shadan drove around the barrier in order to access the road. In 1995 Shadan sought a declaratory judgment that the Richardson Road is a town way, a public easement, or an easement by necessity. In a separate action he also sought a declaratory judgment that the Town of Skowhegan had unlawfully imposed a land use restriction on his property. The two actions were consolidated by order of the court. After a two day hearing, the court ruled that Shadan "has failed to establish any right-of-way across" the Richardson Road. The court also decided in favor of the Town of Skowhegan on Shadan's land use restriction claim. From the judgment entered accordingly, this appeal followed.[1]

## II.

### Common Law Abandonment

[¶ 3] Shadan urges us to conclude that the Richardson Road is a town way. We affirm the court's conclusion that even if the Richardson Road were once a town way, it has been abandoned by operation of the common law of abandonment.[2] It is therefore

---

1. The court ruled in favor of Shadan on his trespass claim against the Bowzers and in favor of the Bowzers on their trespass and related claims against Shadan. The court awarded damages to the parties of one dollar. These claims are not at issue in this appeal.

2. There is ambiguity in the record as to the issue of the Town's acceptance of the road. In 1852 the Town of Skowhegan voted to "accept the road as laid out to Silas Richardson's west line," known as the Richardson Road. Despite the vote to accept the road, the town selectmen refused to lay out and accept a portion of the Richardson Road 112 rods and 17 links in length because of a potential claim for damages by the owner of the land underlying the road. A number of townspeople petitioned the Somerset County Commissioners to order the Town to accept the entire Richardson Road pursuant to R.S. ch. 25, § 34 (1841), which provided:

unnecessary to decide whether the Town ever accepted the portion of the Richardson Road that abuts Shadan's property.

■ [¶ 4] The common law of abandonment recognizes that rights in public ways may be lost through neglect. Under the doctrine of common law abandonment, "a presumption of a public intent to abandon a road may be raised by evidence of nonuse for twenty years or more, intentional and voluntary desertion of a road, or acquiescence, even for a few years, in the discontinuance of an old road combined with use of a new road." *Lamb v. Town of New Sharon*, 606 A.2d 1042, 1046 (Me.1992).[3] This presumption, once raised, may be rebutted by evidence of a contrary intent on the part of the public. We will not disturb the trial court's determination that Shadan failed to meet his burden of rebutting the presumption of abandonment unless the evidence compelled the court to find in Shadan's favor. *Id.* at 1047.

■ [¶ 5] Donald Whitten of the Maine Department of Transportation testified that MDOT records indicated that the last expenditure of funds by the Town of Skowhegan on improvements to the Richardson Road was in 1940.[4] Whitten further testified that MDOT records showed that by 1966 the Richardson Road had become impassable. Several former owners of land abutting the Richardson Road testified that the road was passable until the mid 1940s and that the Town had plowed the road until 1950, when the last house on the Richardson Road burned. Even if the Town had plowed the road after 1950, such evidence would be insufficient to rebut the presumption of abandonment. *Whalen v. Town of Livermore*, 588 A.2d 319, 321 (Me.1991), *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). Because of the twenty year period of non-use of the Richardson Road beginning in 1950, the town abandoned the road in 1970. Shadan failed to meet his burden of persuasion, and the court did not err by ruling that if the Richardson Road were ever a town way it was subject to common law abandonment by 1970.

### Public Prescriptive Easement

■ [¶ 6] Shadan contends that the court erred by determining that members of the public did not possess a prescriptive easement over the Richardson Road.

[T]he party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. Acquiescence by the owner to the use is essential, and, in this regard, the acquisition of an easement by prescription differs from the acquisition of title by adverse possession.

*Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me.1984) (citations omitted). "Acquiescence implies 'passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it.'" *Id.* (quoting *Pace v. Carter*, 390 A.2d 505, 507 (Me.1978)).

■ [¶ 7] Shadan cites evidence that abutting landowners historically used the road to access their property, and he cites further evidence of recreational use of the road by members of the public. Shadan has failed to rebut the presumption that such

The Commissioners may ... approve and allow of the way, as laid out or altered by the selectmen, and direct the said laying out ... and acceptance, to be recorded by the clerk of such town; which shall have the like effect, as if accepted by the town and recorded.

The Commissioners ordered the Town to lay out and accept the 112 rod and 17 link portion of the Richardson Road that it had refused to accept. The record does not indicate what action the Town took subsequent to the decision of the County Commissioners.

3. Abandonment by the public under common law vests title to the way in the abutting landowners. *Martin v. Burnham*, 631 A.2d 1239, 1241 (Me. 1993).

4. The record includes the minutes of town meetings from 1939 and 1940 when the Town approved the expenditure of funds for repair of the Richardson Road.

recreational use was with the permission of abutting landowners. *S.D. Warren Co. v. Michael Vernon*, 1997 ME 161, ¶ 17, 697 A.2d 1280("Use of the road by the public for hunting or recreation is presumed permissive."); *See Augusta Country Club*, 477 A.2d at 1130. The use of the road up to the 1950s by abutting landowners to access their own land also does not help Shadan's case. "The test of a public use is not the frequency of the use, or the number using the way, but its use by people who are not separable from the public generally." *Inhabitants of the Town of Kennebunkport v. Forrester*, 391 A.2d 831, 833 n. 2 (Me.1978). Evidence of the use of the road by abutting landowners is insufficient to establish the existence of a public prescriptive easement because "their travel does not constitute use by people who are 'not separable from the public generally.'" *S.D. Warren*, 1997 ME at ¶ 17, 697 A.2d 1280 (quoting *Forrester*, 391 A.2d at 833 n. 2).[5]

### Easement by Necessity

■ [¶ 8] Shadan challenges the court's determination that he has no easement by necessity over the Richardson Road. An easement by necessity may be created when a grantor divides a parcel of land into smaller parcels and conveys a lot that is "landlocked" by the grantor's surrounding land and cannot be accessed from a road or highway. "Because of the strict necessity of having access to the landlocked parcel, an easement over the grantor's remaining land benefitting the landlocked lot is implied as a matter of law...." *Morrell v. Rice*, 622 A.2d 1156, 1158 (Me.1993).

■ [¶ 9] There is no evidence in the record that at the time Shadan alleges his parcel and adjacent parcels were severed by a common owner the "use of the retained parcel [was] strictly necessary to the enjoyment of the conveyed land." *Taylor v. Nutter*, 687 A.2d 632, 636 (Me.1996). In addition, Shadan did not offer any evidence that, either at the time of his purchase of the land or at any

time since, he has not had alternative means of access to his land. The court found that Shadan had access to his land over the Lambert Road, even though that road was in poor condition, and the record supports the court's finding. *See Amodeo v. Francis*, 681 A.2d 462, 465 (Me.1996).

### III.

[¶ 10] We turn now to Shadan's zoning and constitutional taking claim against the Town of Skowhegan set forth in his other declaratory judgment action. We first address Shadan's contention that the court deprived him of the opportunity to be heard on this claim.

[¶ 11] The court (*Kravchuk, J.*) consolidated Shadan's complaints against the Bowzers and the Town and ordered the complaint against the Town stayed until after a hearing on the complaint against the Bowzers. At the trial, the court (*Alexander, J.*) stated at the close of the evidence on the status of the Richardson Road that it would consider the claims against the Town on documentary submissions from the parties. When Shadan asked the court if he would have the opportunity to present testimonial evidence on his claims against the Town, the court responded that it would treat the constitutional claims "like a motion for summary judgment on the available documents, if you will, by the town. If it was denied, then you'd have the ability to present evidence on it ... if it's okay if we do it that way." Shadan did not object to this procedural course. His objection to this procedure on appeal is untimely.

[¶ 12] In considering the merits of Shadan's claim against the Town, we first examine the relevant factual background. In 1983 the developer of the subdivision in which Shadan's land is located submitted the proposal to the Skowhegan Planning Board as "seasonal lots ... not for residential housing." The Planning Board approved the proposed subdivision with the condition that "[e]ach owner shall be responsible for his

---

5. The court also did not err by rejecting Shadan's contention that he has acquired a private easement by prescription over the Richardson Road. There is no evidence in the record to establish the use of the road by his predecessors. Shadan, who has only owned his land since 1985, has not established the requisite 20 years of adverse use. *See S.D. Warren Co. v. Michael Vernon*, 1997 ME 161, ¶ 17, 697 A.2d 1280.

share of the expense for the general maintenance, repair and upkeep of the right-of-way...." The subdivision plat indicates that it is "approved for recording purposes subject to the conditions set forth below." Those conditions read: "Lots shall be restricted for seasonal use only and shall not be further divided. Access way to be maintained by lot owners and shall not become subject to town maintenance."

[¶ 13] The subdivision developer deeded several lots to Shadan's predecessor in title. The deed referred to the conditions listed on the subdivision plat:

> This deed is given subject to the conditions of the Planning Board of the Town of Skowhegan set forth on said Final Plan of the Oak Pond Stream Subdivision recorded in the Somerset County Registry of Deeds in Plan File B–83–078, as follows:
>
> ...
>
> 2. Lots shall be restricted for seasonal use only and shall not be further divided....

The contract for the sale of land to Shadan included the following provision: "Buyer shall keep, preserve and maintain said property in good condition, shall not commit or permit waste of said property and shall comply with all ordinances, regulations and conditions relating to or affecting said property." After Shadan purchased his land, he built a house and used it as his full year residence. In March 1995, the planning board denied Shadan's petition for a variance from the seasonal use restriction on his land. The Town refused to grant the variance on the ground that "[t]he road is not adequate for year round use."[6] The Town's Land Use Board of Appeals affirmed the denial of the variance.

### Zoning Claim

[¶ 14] Shadan asserts that the seasonal use restriction in force on the Oak Pond Stream Subdivision is a "de facto zoning" of his land because the Town has limited the uses to which he is entitled to put his land. In support of that contention, he points out that the Town is attempting to enforce the seasonal use restriction by instituting a procedure pursuant to M.R.Civ.P. 80K to evict him from his property.[7]

[¶ 15] The Planning Board was authorized to grant approval of a subdivision "upon such terms and conditions as it may deem advisable ... to satisfy any other regulations adopted by the reviewing authority, and to protect and preserve the public's health, safety and general welfare." 30 M.R.S.A. § 4956(2)(D) (1978) (repealed, Laws 1987, c. 737, § A, 1; Laws 1989, c. 878, § C–25, eff. April 20, 1990.) The Town's Subdivision Standards, adopted in 1982, authorize the Board to "impose further conditions" on a proposed subdivision before approving the application. *See Mutton Hill Estates, Inc. v. Town of Oakland,* 488 A.2d 151, 154–55 n. 8 (Me.1985). The developer of the Oak Pond Stream Subdivision proposed restricting the subdivision to seasonal use, and the Board approved that restriction and continues to enforce it because of the poor condition of road access to the subdivision. Regulation of a subdivision is not zoning. Rather, such regulation protects the public health, safety, and welfare through the imposition of reasonable site-specific restrictions that ensure municipal control by "flexible

---

6. Article XII, section 1101, of the Town's Subdivision Standards sets forth the procedure for determining whether to grant a variance:

> Where the Board finds that [ ] special unforeseen circumstances, not of the applicant's own making or previous knowledge, have arisen which may be varied without jeopardy to the public health, welfare and safety, the Board, by a unanimous vote, may authorize a variance from strict compliance with any provision of this ordinance; provided that such act will not have the effect of nullifying the intent and purposes of this or any other ordinance, and the public's interests will be preserved.

7. The Town has instituted a Rule 80K proceeding in the District Court to evict Shadan because he has been living on his land throughout the year. Pursuant to M.R.Civ.P. 80K, the Town must allege a violation of "land use laws and ordinances." The Town's subdivision ordinance authorizes the planning board to "take such steps as they deem to be in the best interests of the Town to effect compliance with the provisions as hereinafter set forth." The 80K proceeding has been stayed pending the outcome of this matter.

and practical means." *In re Belgrade Shores, Inc.,* 371 A.2d 413, 415 (Me.1977).

### Constitutional Taking Claim

[¶ 16] Shadan contends that the Town has placed such a serious impediment on the use and enjoyment of his land as to constitute a taking in violation of his constitutional rights. We disagree. "We have previously noted in the zoning variance context that 'the issue is whether strict compliance with the terms of the Ordinance would result in the practical loss of substantial beneficial use of the land.' *Leadbetter v. Ferris,* 485 A.2d 225, 227–28 (Me.1984). This principle is equally applicable in the case of a subdivision variance request." *Your Home, Inc. v. Town of Windham,* 528 A.2d 468, 471 (Me.1987). We have never determined that a property owner is immune from reasonable restric-

tions on enjoyment of land. *See id.* ("Your Home is not entitled to a maximum return on its investment in the property; rather, it is entitled to some reasonable use.") Shadan still has enjoyment of his land on a seasonal basis. The Town has not unlawfully taken Shadan's property. "No taking exists unless the property has been rendered substantially useless." *Sibley v. Inhabitants of the Town of Wells,* 462 A.2d 27, 31 (Me.1983).

The entry is:

Judgment affirmed.