STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-264
GAB- YOR - 5/8/2002

WILLIAM D. FULLER, et al.,

       Plaintiffs

v.

**JUDGEMENT**

DONALD L. GARBRECHT
LAW LIBRARY

MAY 17 2002

TOWN OF BUXTON, et al.,

       Defendants

This case involves claims and counterclaims which seek declaratory judgements as to whether Spruce Swamp Road and Osborne Road Extension are public ways in the Town of Buxton. Also pending is a Rule 80B appeal, which the parties agree is subsumed within the declaratory judgement action. The case was heard without a jury on February 11 and 12, 2002. The parties submitted post-trial memos and closing arguments were heard on March 22, 2002. Following review and consideration, judgement will enter in favor of the Town of Buxton.

## BACKGROUND

The pleadings in this case seek a declaratory judgement as to the status of certain roads in Buxton. For ease of reference, attached hereto is a schematic representation of Plaintiffs' Exhibit #35, a diagram depicting the features of the area in dispute.

The Fullers claim Spruce Swamp Road from point 2 to point 3 on the diagram is no longer a public way and that the Osborne Road Extension from point

2 to point 4 on the diagram is no longer a public way. The town asserts that both remain public ways.

## FINDINGS OF FACT

1. The parties stipulate that Spruce Swamp Road (also called Trundy Spring Road) was laid out and accepted as a public road within the Town of Buxton during the period 1765 to 1780. As laid out, it extends approximately 1.3 miles from what is now known as Waterman Road easterly to what is now known as Route 202. Its location, as laid out, and references to the official documents laying it out as a public road are shown on a plan prepared by Robert A. Yarumian, II, PLS. Def. Ex. 59. This is shown as point 1 to 3[1] on the diagram.

2. The parties stipulate Osborne Road Extension was laid out and accepted as a public road within the Town of Buxton during the period 1765 to 1783. As laid out, it extends approximately 1,900 feet from what is now known as Osborne Road southerly to the intersection with Spruce Swamp Road. Its location, as laid out, and references to the official documents laying it out as a public road are shown on Def. Ex. 59. This is shown as point 2 to 4 on the diagram.

3. In 1983 the Fullers purchased a large tract of land from Mervin Rowe. That deed is recorded in the York County Registry of Deeds at Book 3208, Page 81. Def. Ex. 16. They have owned that property since that time. A portion of this land had been used for many years by Rowe and, before him, by his grandfather for hay farming. In 1983, some of the land was open fields and some of the land was

---

1 Point 3 is actually at Libby Ave., a short, el-shaped roadway connecting to Rt. 202.

wooded. There were no structures on the property in 1983 except the foundation from what appears to have been a small building that apparently was burned or otherwise destroyed before 1900.

4. Both Spruce Swamp Road and the Osborne Road Extension cross the Fuller property.

5. The November 29, 1983 deed from Rowe to the Fullers refers to the conveyed land as "being situated on both sides of the Spruce Swamp Road in the Town of Buxton." The property description in that deed refers to Spruce Swamp Road when it states: "Beginning . . . on the sideline Spruce Swamp Road" and "crossing Spruce Swamp Road."

6. The property description in the November 29, 1983 deed from Rowe to the Fullers refers to Osborne Road Extension when it states: "on the northwesterly sideline of a Town road" and "thence . . . by said Town road."

7. The Fullers acknowledge that the section of Spruce Swamp Road from Waterman Road to their house/barn is a public road

8. The survey plan prepared by T.O. Brown P.E. and dated December 1981, Revised November 21, 1983, was commissioned by Mervin Rowe. It shows the property conveyed to the Fullers. It also shows Spruce Swamp Road and Osborne Road Extension and labels the latter as "Town Road". Def. Ex. 15.

9. When the Fullers purchased their property, they intended to use Osborne Road Extension and Spruce Swamp Road, from its intersection with Osborne Road Extension, to access their proposed home construction site.

3

10. In the late fall and winter of 1983/84, after the Fullers purchased their property, the Town of Buxton spent approximately $700.00 to improve the traveled way of Spruce Swamp Road from the bridge over the Little River to the site of the Fullers' house construction. Funds for this project came from the general road maintenance account of the Buxton Road Commissioner in charge of this area of the Town. Prior to this work, this section of Spruce Swamp Road was a dirt road, showing a clear traveled way with wheel tracks and grass growing in the center.

11. On February 9, 1984, Central Maine Power Company, in connection with bringing power to the Fullers, applied to the Town for a Pole Location Permit to erect poles along Osborne Road Extension. This Permit was approved by the Town Selectmen. Def. Ex. 20.

12. In 1984, the Buxton Town Meeting voted a specific appropriation of $10,000 to improve the traveled way of Spruce Swamp Road. Town records show the following action taken at the Town Meeting:

> Article 19. Moved and seconded to appropriate from the Dept. of Transportation Local Road Assistance fund the sum of $10,000 to rebuild a portion of the Spruce Swamp Road.

Pl. Ex. 25.

13. The funds appropriated in 1984 were expended by the Road Commissioner in 1984 to add gravel, to grade, to construct culverts and otherwise to improve the traveled way from the bridge over the Little River to the intersection of Spruce Swamp Road and Osborne Road Extension; although most of the work was done between the bridge and the Fullers' house, which by that time had been built. See photo at Def. Ex. 74.

4

14. In 1984, the Road Commissioner's crew used a bulldozer to clear and grade the section of Spruce Swamp Road from the intersection of Osborne Road Extension to Libby Avenue, a few hundred feet from Route 202. This work was done at the same time that the Town was doing the other improvements to Spruce Swamp Road funded with the $10,000 appropriation by the Town Meeting.

15. From 1984 until the present, the Town has plowed Spruce Swamp Road from Waterman Road to the Fuller house. Occasionally, since 1984, the Town has plowed past the Fuller house to the intersection with Osborne Road Extension. The school bus traveled up Spruce Swamp Road to the Fullers' house while the Fullers' daughter was in school.

16. The Fullers attempted to keep the public from traveling over the section of Spruce Swamp Road beyond their house during the winter, spring and other wet times of the year. They have erected a "Road Closed" sign near their house and have strung a wire cable across the road in front of their house. They have also attempted to keep the public from traveling over Osborne Road Extension by erecting a gate across the roadway.

17. On June 24, 1985, the Town's Attorney wrote to the Fullers informing them that the Town had received reports that the Fullers were obstructing Spruce Swamp Road. The Attorney went on to state that the Town considers Spruce Swamp Road "to be a public way" and to threaten legal action if the Fullers obstruct or damage the road.

18. The section of Spruce Swamp Road from Waterman Road to just before the bridge over the Little River has been paved by the Town. There are at

5

least 12 houses on that section. Until the 1950's, there were few if any houses on that section. It was essentially a dirt road, consisting of a traveled way showing wheel tracks with grass growing in the center. The Town improved that section, including paving it, as houses were built.

19. In 1952, the Town Meeting voted to appropriate $700 to repair a culvert on Spruce Swamp Road.

20. In 1960, the Town Meeting voted to appropriate $1,500 to put a cement slab on the bridge over the Little River on Spruce Swamp Road.

21. In 1961, the Town Meeting voted to appropriate $1,000 for graveling Trundy Spring Road, also known as Spruce Swamp Road.

22. In 1965, the Selectmen placed an article on the Town Meeting Warrant to discontinue Spruce Swamp Road from the Little River to Route 202. The 1966 Town Meeting voted to indefinitely postpone that article; effectively defeating it.

23. In 1970/71, Road Commissioner Sharon Elwell used a bulldozer to clear and grade the section of Spruce Swamp Road from its intersection with Osborne Road Extension up to Libby Road. Mr. Elwell testified that this work was done at about the same time as the CETA workers were clearing brush in the area.

24. In 1980, the Town Meeting voted against appropriating $25,000 for maintenance of Trundy Spring Road, also known as Spruce Swamp Road.

25. In 1985, the requisite number of voters signed a petition, prepared by Linda Fuller, placing an article on the Town Meeting Warrant, to discontinue Spruce Swamp Road. The Town Meeting voted against that article.

26. In 1985, the Selectmen placed an article on the Town Meeting Warrant to appropriate $10,000 to "complete the rebuilding program of the Spruce Swamp Road." The Town Meeting voted against that article.

27. On June 17, 2000, the Town Meeting voted to appropriate a sum not to exceed $3,000 for improvements to Spruce Swamp Road.

28. On August 16, 2000, the Selectmen held a public hearing on the question of whether they should declare Spruce Swamp Road to be abandoned pursuant to 23 M.R.S.A. Sec. 3028. The Selectmen voted unanimously on September 13, 2000 that Spruce Swamp Road from the Waterman Road to Route 202 had not been abandoned.

29. In 2001, the Town Meeting appropriated $3,590 to place new guard rails along the bridge over the Little River and another bridge.

30. In 2002, the Road Commissioner installed culverts for drainage under Spruce Swamp Road, in the vicinity of the Phinney property.

31. Frank Davis, a life long resident of the area, testified that he and others drove vehicles on these roads from the 1950's on. He testified that he drove his car/truck (as did others) over the entire Spruce Swamp Road and Osborne Road Extension, including the portion of Spruce Swamp Road up to what is now Libby Avenue regularly until the late 70's.

32. Frank Davis also testified that various persons have used the section of Spruce Swamp Road for vehicular travel between its intersection with Osborne Road Extension and Route 202 in the 1980's and 1990's. This was also evidenced by

the fact that William Fuller and others have been approached by vehicle operators whose vehicles have become stuck along that section.

33. The condition of Spruce Swamp Road in the 1960's and through the 1990's, in that section between Osborne Road Extension and Route 202, was as a dirt road, showing two wheel tracks. There are no houses or other structures served by this section of the road.

34. In the 1970's and 1980's, the Fullers rode Mr. Fuller's motorcycle over Osborne Road Extension and thence over the section of Spruce Swamp Road between Osborne Road Extension and Waterman Road.

35. Mervin Rowe testified that, before World War II, both roads were maintained by the Town and were passable with vehicles. For example, he stated that his family and their employees used the roads for hauling hay to train stations for shipment to Boston. This included use of both roads to access the main roads, i.e., Route 202 and Waterman Road. Mr. Rowe considered them to be town roads.

36. In the early 1970's, the Selectmen applied for permission from the York County Commissioners not to plow Spruce Swamp Road and Osborne Road Extension. That permission was granted.

37. In 1954/1955, Road Commissioner Wilmot Lewis cut brush from the sides of the traveled way of Osborne Road Extension and spread gravel on and graded Osborne Road Extension. He had 4 or 5 men in his crew and the work took his crew a week or two. Mr. Lewis testified that the Selectmen who directed him to do the work said the Extension was a town road.

38. In the 1960's, the Road Commissioner for that area brought in a culvert and installed it at a low point in Osborne Road Extension. Gravel was also brought in and spread in this area. This work was done in response to requests from Mervin Rowe.

39. Sharon Elwell, Road Commissioner, testified that in the 1960's and 70's he hauled in gravel for Osborne Road Extension at various times.

40. While Robert Libby was a Selectman, i.e., from 1968 to 1982, Mervin Rowe came to the Selectmen almost annually to ask for work to be done on Osborne Road Extension. The Selectmen responded by sending the Road Commissioner, Harry Roberts, Sr., to perform the maintenance work on the Road. Mr. Libby often checked himself to see that the work had been done.

41. Mr. Wilmot Lewis, who was a Selectman from 1973-1975, testified that Mervin Rowe sometimes contacted him and he, Mr. Lewis, would have the Road Commissioner do work on Osborne Road Extension.

42. The current condition of Osborne Road Extension is a clearly defined dirt road that is readily passable with motor vehicles.

43. The current condition of the Spruce Swamp Road is a clearly defined and readily passable dirt road from the bridge, past the Fullers' house, to the intersection with Osborne Road Extension. From the intersection to Libby Road, it is defined dirt road, but in very rough condition.

44. At their February 27, 1991 meeting, the Selectmen determined, 2-1, that Osborne Road Extension is a town road. Def. Ex. 30.

9

45. On April 10, 1991, two Selectmen signed a letter stating that Osborne Road Extension had been abandoned. Pl.Ex. 1. No formal vote on the substance of the letter was taken at the Selectmen's meeting held on the same date as the letter prior to issuance of the letter.

46. In 1994, the Chair of the Board of Selectmen issued three letters to abutting property owners (Capterton, Bowder and Fuller) indicating that Osborne Road Extension is a town road. Def. Ex. 35, 37; Pl. Ex. 5.

47. In 1995, the Chair of the Board of Selectmen discovered the April 1991 letter and felt bound by it. He then wrote letters indicating that, based on the April 1991 letter, Osborne Road Extension had been abandoned.

48. Both Spruce Swamp Road and Osborne Road Extension are visible as traveled ways on aerial photographs taken in 1954 (Def. Ex. 7), 1969 (Def. Ex. 13) and 1994 (Def. Ex. 34).

## CONCLUSIONS OF LAW

A. Statutory Abandonment.

The relevant statute, 23, M.R.S.A. §3028, while written to address the situation in which a municipality argues that a way has been abandoned, nevertheless applies here as well.

1. Maine statutes provide that it shall be prima facie evidence of abandonment of a town way if that way is not kept passable for use of motor vehicles at the expense of the town for a period of 30 or more consecutive years. 23 M.R.S.A. §3028.

2. A presumption of abandonment may be rebutted by evidence that manifests a clear intent by the town and the public to consider or use the way as if it were a public way. 23 M.R.S.A. §3028. Thus, acts of maintenance which, taken alone, are not enough to rebut a presumption of abandonment, but when coupled with other evidence showing a clear intent on the part of the public and the town to consider or use the way as if it were a public way, will rebut the presumption. 23 M.R.S.A. §3028. Stated differently, a clear intent on the part of the public and the town to consider or use the way as a public way will rebut a presumption of abandonment which is based upon lack of maintenance which results in the road becoming impassable.

3. It is the plaintiff who bears the burden of proving that at no time during a 30 year period has the road been kept passable for motor vehicles at town expense. *Lamb v. Euclid Ambler Associates*, 563 A.2d 365, 367 (Me. 1989).

4. The term "passable" is not synonymous with "safe and convenient" and the public will not lose its rights to continuation of a public way by the town's failure to maintain the road to a "safe and convenient" standard. *Town of South Berwick v. White*, 412 A.2d 1225, 1227.

5. Road maintenance at town expense will preclude a prima facie case of abandonment. *Earwood v. Town of York*, 1999 ME 3, 722 A.2d 865 (Me. 1999).

6. In *Town of South Berwick v. White*, 412 A.2d 1225 (Me. 1980), a case decided before the statute was amended, *inter alia*, to provide that isolated acts of maintenance do not rebut a presumption of abandonment, the Law Court found

11

that the statutory presumption of abandonment arises "only in those cases where the nonapplication of public funds for the maintenance of the town way was continuous and uninterrupted" for the requisite 30 year period.

7.    The provision in 23 M.R.S.A. §3028 to the effect that a determination by the selectmen of the status of a road as abandoned or not did not become effective until October 9, 1991. 1991 P.L.Ch. 195. The April 10, 1991 letter from the selectmen indicating abandonment pre-dated this provision and, in any event, was not a formal vote or decision by the board.

B.  Common Law Abandonment

1.    The common law holds that there may be abandonment of a public road by non-user. *Smith v. Dickson*, 225 A.2d 631 (Me. 1967). See, *Town of South Berwick v. White*, 412 A.2d 1225 (Me. 1980).

2.    The common law of abandonment recognizes that rights in public ways may be lost through neglect. *Shadan v. Town of Skowhegan*, 1997 ME 187, 700 A.2d 245 (Me. 1997).   Under the doctrine of common law abandonment, a presumption of public intent to abandon a road may be raised by evidence of nonuse for twenty years or more, intentional and voluntary desertion of a road, or acquiescence, even for a few years, in the discontinuance of an old road combined with use of a new road. *Lamb v. Town of New Sharon*, 606 A.2d 1042 (Me. 1992). This presumption, once raised, may be rebutted by evidence of a contrary intent on the part of the public. *Shadan*, supra.

12

3.     There is abundant evidence that both the town itself and various citizens consistently understood and intended that the disputed roadways maintained their public character.

## AFFIRMATIVE DEFENSES

Plaintiffs fail to establish that equitable estoppel applies because it is clear from their deeds that they were aware that the disputed roadways were either currently or in the past public ways and that their status as public ways was, at the very least, in question.  (i.e. the 1985 Town Meeting vote against abandonment).

The entries will be as follows:

> On Plaintiffs' complaint in all its particulars, judgement for Defendants.
>
> On Defendants' counterclaim, judgement for Defendants to the effect that the disputed roadways are declared public ways.

Dated:     May 8, 2002

G. Arthur Brennan
Justice, Superior Court

Plaintiff:
Kurt E Olafsen, Esq.
Olafsen & Butterfield
PO Box 130
Portland ME   04112-0130

Defendant:
John A. Graustein, Esq.
Drummond Woodsum & MacMahon
PO Box 9781
Portland ME   04104

